[No. S140612. Apr. 10, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFONSO GOMEZ, Defendant and Appellant.

## COUNSEL

Michael Bacall, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CORRIGAN, J.**—Here defendant seized property from the victim's business while the victim was not present. The victim arrived on the scene before defendant departed and followed him as he was leaving. As the victim followed, defendant shot at him. Did defendant commit a robbery? Yes.

## I. FACTS AND PROCEDURAL HISTORY

Shortly before 5:00 a.m. on January 12, 2004, defendant broke into an Anaheim restaurant. After covering two surveillance cameras with duct tape, he pried open and took money from an ATM in the lobby. He then went to the manager's office on the second floor. He forced open the desk and file drawers, but found no cash. As he went back downstairs, defendant heard the manager, Ramon Baltazar, unlock the front door. Defendant took a handgun from his backpack, placed it in his waistband, and walked to the restaurant's kitchen.

Meanwhile, Baltazar noticed the alarm had been deactivated and the ATM damaged. Hearing a noise in the kitchen and seeing the glow of a flashlight, he went outside, got in his truck and called 911. While speaking to the police dispatcher, Baltazar saw defendant leave by a side door and walk away. Baltazar drove behind defendant, staying on the phone with the dispatcher. Baltazar did not intend to apprehend defendant himself, but wanted to help the police find him. Baltazar did not know what, if anything, defendant had taken from the restaurant.

As Baltazar followed from 100 to 150 feet away, defendant fired two shots at him; he later said that he wanted to scare Baltazar. Baltazar quickly drove away, and defendant was arrested a short time later with money from the ATM in his backpack.

The jury convicted defendant of second degree robbery and commercial burglary. (Pen. Code, §§ 211, 212.5, subd. (c), 459, 460, subd. (b).)[1] The jury also found that defendant was armed during the burglary and fired a gun during the robbery. (§§ 12022, subd. (a)(1), 12022.53, subd. (c).) Defendant was sentenced to three years in prison for the robbery, with 20 years for the

---

[1] Further undesignated statutory references are to the Penal Code.

gun enhancement. Sentencing on the burglary charge and the arming enhancement was stayed under section 654.

On appeal, defendant claimed the evidence was insufficient as a matter of law to support his robbery conviction because the victim was not present when defendant initially took the money. The Court of Appeal rejected this argument. Relying on *People v. Estes* (1983) 147 Cal.App.3d 23 [194 Cal.Rptr. 909] (*Estes*), it held that defendant's use of force to *retain* the stolen property and remove it from Baltazar's immediate presence was sufficient to support the robbery conviction.

## II. DISCUSSION

■ Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Robbery is, therefore, " ' "a species of aggravated larceny." ' " (*People v. Ortega* (1998) 19 Cal.4th 686, 694 [80 Cal.Rptr.2d 489, 968 P.2d 48], quoting Perkins & Boyce, Criminal Law (3d ed. 1982) p. 350 (Perkins).) Theft by larceny may be committed without force or the threat of violence and may be completed without the victim ever being present. (See § 484, subd. (a).) To elevate larceny to robbery, the taking must be accomplished by force or fear and the property must be taken from the victim or in his presence.[2]

In robbery, the elements of larceny are intertwined with the aggravating elements to make up the more serious offense. The issue here is the temporal point at which the elements must come together. The answer lies in the fact that robbery, like larceny, is a continuing offense. All the elements must be satisfied before the crime is completed.[3] However, as we explain in greater detail below, no artificial parsing is required as to the precise moment or order in which the elements are satisfied. This conclusion is consistent with decades of California jurisprudence.

We begin by considering the basic elements of theft by larceny. Larceny requires the taking of another's property, with the intent to steal and carry it

---

[2] Section 211, enacted in 1872, incorporates common law robbery requirements. (See *People v. Tufunga* (1999) 21 Cal.4th 935, 945–947 [90 Cal.Rptr.2d 143, 987 P.2d 168].) Under the common law, the crime of robbery consists of larceny plus two aggravating circumstances: (1) the property is taken from the person or presence of another; and (2) the taking is accomplished by the use of force or by putting the victim in fear of injury. (4 Wharton's, Criminal Law (15th ed. 1995) § 454, pp. 2–3 (Wharton); 3 LaFave, Substantive Criminal Law (2d ed. 2003) § 20.3(a), pp. 996–997.)

[3] We assume without deciding that Baltazar had a possessory interest in the cash taken from the ATM. The issue of possession was not challenged by defendant, and is not before this court on appeal.   .

away. (*People v. Davis* (1998) 19 Cal.4th 301, 305 [79 Cal.Rptr.2d 295, 965 P.2d 1165].)[4] "Taking," in turn, has two aspects: (1) achieving possession of the property, known as "caption," and (2) carrying the property away, or "asportation." (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548]; see 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, § 15, p. 35; 3 Wharton, *supra,* § 357, pp. 412–413.) Although the slightest movement may constitute asportation (*People v. Davis,* at p. 305), the theft continues until the perpetrator has reached a place of temporary safety with the property (*People v. Flynn* (2000) 77 Cal.App.4th 766, 772 [91 Cal.Rptr.2d 902]).

A number of cases have considered the interaction of the taking element of larceny with the aggravating factors that elevate a theft to a robbery: the use of force or fear and the taking from the victim's presence.

A. *Force or Fear*

In *People v. Anderson* (1966) 64 Cal.2d 633 [51 Cal.Rptr. 238, 414 P.2d 366] (*Anderson*) we considered when the element of force or fear must come into play to make a theft a robbery. Anderson, posing as a customer, went to a pawnshop where he inspected a shotgun. He agreed to buy the gun and ammunition. As the salesman totaled the price, Anderson grabbed the gun, loaded it, and pointed it at the salesman, threatening to kill him. When another employee told Anderson to take the gun and leave, Anderson shot and killed him. (*Id.* at pp. 635–636.) On appeal, Anderson complained that since he obtained possession of the gun without the use of force or fear, there could be no robbery as a matter of law. We upheld the robbery conviction: "In this state, it is settled that a robbery is not completed at the moment the robber obtains possession of the stolen property and that the crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property. [Citations.] [¶] Accordingly, if one who has stolen property from the person of another uses force or fear in removing, or attempting to remove, the property from the owner's immediate presence, as defendant did here, the crime of robbery has been committed." (*Id.* at p. 638.)

---

[4] In 1927, the crimes of theft by larceny, embezzlement, and false pretenses were consolidated in section 484. (*People v. Davis, supra,* 19 Cal.4th at p. 304.) "Insofar as it defines theft by larceny, Penal Code section 484, subdivision (a), provides simply that 'Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another . . . is guilty of theft.' " (*Davis,* at p. 304, fn. 1.)

*Anderson, supra,* 64 Cal.2d 633, stands for two points relevant here. First, a taking is not over at the moment of caption; it continues through asportation. Second, a robbery can be accomplished even if the property was peacefully or duplicitously acquired, if force or fear was used to carry it away.

We discussed both points in *People v. Cooper* (1991) 53 Cal.3d 1158 [282 Cal.Rptr. 450, 811 P.2d 742] (*Cooper*), which involved the liability of an aider and abettor for robbery. Cooper's codefendants knocked the victim to the ground, stole his wallet, then jumped into Cooper's car. Cooper drove them away. He argued that the robbery was over by the time the codefendants jumped into the car because they had already seized the wallet, so that arguably he could only be liable as an accessory after the fact. We rejected this argument. "[T]he commission of a robbery for purposes of determining aider and abettor liability continues until all acts constituting the robbery have ceased." (*Id.* at p. 1161.) "The taking element of robbery" consists of both a caption and an asportation. (*Id.* at p. 1165.) Therefore, to determine the duration of a robbery, the focus must be on its final element, asportation. We emphasized that "[a]lthough, for purposes of establishing guilt, the asportation requirement is initially *satisfied* by evidence of slight movement [citation], asportation is not confined to a fixed point in time. The asportation continues thereafter as long as the loot is being carried away to a place of temporary safety." (*Ibid.,* fn. omitted.) Thus, for conviction of the offense of aiding and abetting a robbery, a getaway driver must form the intent to facilitate or encourage the commission of the robbery before or during the carrying away of the loot. (*Ibid.*)[5]

In analyzing the continuing nature of robbery, *Cooper* cited *People v. Perhab* (1949) 92 Cal.App.2d 430 [206 P.2d 1133], an older case that itself referred to preceding decisions: "We adopt the theory announced in the cited cases that the 'taking' of the property in the possession of the complaining witness, from his immediate presence and possession, is not necessarily completed the moment the thief places his hands upon it. The crime of robbery also includes the element of asportation and appropriation of another's property. The escape of the thief with his ill-gotten gains by means of

---

[5] In *Cooper,* we distinguished the "escape rule," which originated in the landmark case of *People v. Boss* (1930) 210 Cal. 245 [290 P. 881]. Under the escape rule, as applied in the context of the felony-murder doctrine and certain other ancillary consequences of robbery, "robbery is said to continue through the escape to a place of temporary safety, whether or not the asportation of the loot coincides with the escape . . . ." (*Cooper, supra,* 53 Cal.3d at p. 1166.) In *Cooper,* we declined to extend the escape rule, reasoning that in determining aider and abettor liability "the focus must be on the acts constituting the robbery, not the escape." (*Id.* at p. 1168.) We observed in *Cooper* that escape is not an element of robbery, and that in some circumstances the asportation will not coincide with the escape. (*Id.* at pp. 1168–1169.)

arms is as important to the execution of the robbery as gaining possession of it." (*Perhab*, at p. 438; see *Cooper, supra*, 53 Cal.3d at p. 1165.)

*Cooper* also cited with approval Court of Appeal cases holding that theft becomes robbery when the force or fear is used for the first time during asportation. We explained that the asportation phase of robbery "is not confined to a fixed point in time," and added in a footnote: "This reasoning is consistent with a long line of Court of Appeal cases, left undisturbed by this court, holding that mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot. (See, e.g., [*Estes, supra*,] 147 Cal.App.3d [at pp.] 27–28 . . . ; *People* v. *Kent* (1981) 125 Cal.App.3d 207, 213 [178 Cal.Rptr. 28]; *People* v. *Perhab, supra*, 92 Cal.App.2d [at pp.] 434–436.) *In order to support a robbery conviction, the taking, either the gaining possession or the carrying away, must be accomplished by force or fear.* (See § 211.) Thus, these cases implicitly hold that the asportation component of the taking continues while the loot is carried away, and does not end on slight movement." (*Cooper, supra*, 53 Cal.3d at p. 1165, fn. 8, italics added.)

### B. *Immediate Presence*

██  The other aggravating factor required to elevate theft to robbery is that property must be taken from the victim or his immediate presence. As with the duration of robbery from caption through asportation, the spacial concept of immediate presence has been broadly applied.

We explained in *People v. Hayes* (1990) 52 Cal.3d 577 [276 Cal.Rptr. 874, 802 P.2d 376] (*Hayes*): " ' "[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." ' [Citations.]" (*Id.* at pp. 626–627.) Thus, "immediate presence" is "an area over which the victim, at the time force or fear was employed, could be said to exercise some physical control" over his property. (*Id.* at p. 627.) "Under this definition, property may be found to be in the victim's immediate presence 'even though it is located in another room of the house, or in another building on [the] premises.' [Citations.]" (*Ibid.*)

In *People v. Frye* (1998) 18 Cal.4th 894 [77 Cal.Rptr.2d 25, 959 P.2d 183], we noted that the " 'person or immediate presence' " requirement of section 211 "describes a spatial relationship between the victim and the victim's property, and refers to the area from which the property is taken." (*Frye*, at pp. 955–956, citing *Cooper, supra*, 53 Cal.3d at p. 1166.) "Thus, the decisions addressing the 'immediate presence' element of robbery have

focused on whether the taken property was located in an area in which the victim could have expected to take effective steps to retain control over his property. (See, e.g., *People* v. *Harris* (1994) 9 Cal.4th 407, 422–424 [37 Cal.Rptr.2d 200, 886 P.2d 1193] [victim forcibly restrained in car outside office and home while robbers looted each location]; *People* v. *Webster* (1991) 54 Cal.3d 411, 439–442 [285 Cal.Rptr. 31, 814 P.2d 1273] [defendants induced victim to walk a quarter-mile away from his car, then killed him and took his car]; *Hayes, supra,* 52 Cal.3d at pp. 626–629 [victim assaulted and killed 107 feet from motel office where property was taken]; *People* v. *Bauer* (1966) 241 Cal.App.2d 632, 641–642 [50 Cal.Rptr. 687] [defendant killed victim inside her apartment, then stole victim's keys and took her car parked outside].)" (*Frye,* at p. 956.)

### C.   *Immediate Presence During Asportation*

■   As *Cooper, supra,* 53 Cal.3d 1158, and *Anderson, supra,* 64 Cal.2d 633, affirm, if the "force or fear" element comes into play not during caption but during asportation, the crime is still a robbery. The question raised by the facts of this case is a related one: If the "immediate presence" element arises not at caption but during asportation, is there a robbery? The answer is yes and for the same reason articulated in *Cooper* and *Anderson:* robbery is a continuing offense. If the aggravating factors are in play at any time during the period from caption through asportation, the defendant has engaged in conduct that elevates the crime from simple larceny to robbery.

In reaching that conclusion here the Court of Appeal relied on *Estes, supra,* 147 Cal.App.3d 23, for the proposition that the use of force or fear to *retain* property in the victim's presence constitutes robbery. In *Estes,* a security guard at a Sears store saw Estes remove clothing from a rack, put it on, and leave the store without paying. The guard followed Estes outside to the parking lot. About five feet from the door, the guard identified himself and confronted Estes about the items taken. Estes refused to return to the store and began walking away. When the guard tried to detain him, Estes pulled out a knife, swung it at the guard, and threatened to kill him. (*Id.* at p. 26.)

On appeal, Estes argued, inter alia, that he could not be guilty of robbery because the assault was not contemporaneous with the taking of the merchandise from the store. The Court of Appeal disagreed: "The crime of robbery is a continuing offense that begins from the time of the original taking until the robber reaches a place of relative safety. It is sufficient to support the conviction that appellant used force to prevent the guard from retaking the property and to facilitate his escape. The crime is not divisible into a series of separate acts. Defendant's guilt is not to be weighed at each step of the robbery as it unfolds. The events constituting the crime of robbery, although

they may extend over large distances and take some time to complete, are linked by a single-mindedness of purpose. [Citation.] Whether defendant used force to gain original possession of the property or to resist attempts to retake the stolen property, force was applied against the guard in furtherance of the robbery and can properly be used to sustain the conviction." (*Estes, supra*, 147 Cal.App.3d at p. 28.)

Like defendant here, Estes argued that no robbery occurred because the merchandise was not taken from the security guard's immediate presence. The *Estes* Court of Appeal rejected this argument as well: "The evidence establishes that appellant forceably [*sic*] resisted the security guard's efforts to *retake* the property and used that force to remove the items *from the guard's immediate presence.* By preventing the guard from regaining control over the merchandise, defendant is held to have taken the property as if the guard had actual possession of the goods in the first instance. (See [*Anderson, supra,*] 64 Cal.2d 633 . . . .) [¶] . . . A robbery is not completed at the moment the robber obtains possession of the stolen property. The crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property. Here, as in *Anderson,* a robbery occurs when defendant uses force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence regardless of the means by which defendant originally acquired the property." (*Estes, supra*, 147 Cal.App.3d at pp. 27–28, italics added.)

Defendant criticizes the *Estes* court's reliance on *Anderson, supra,* 64 Cal.2d 633, to support the proposition that the immediate presence element of robbery can be satisfied when the victim is not present at the time of taking. He points out that in *Anderson* the clerk was present when the defendant laid hands on the gun. We note, however, that *Estes* did not cite *Anderson* for direct support, but rather extended its analysis. The *Estes* court observed that a robbery occurred in *Anderson* because the defendant used "force or fear in resisting attempts to *regain* the property or in attempting to remove the property from the owner's immediate presence." (*Estes, supra*, 147 Cal.App.3d at pp. 27–28, italics added.) Likewise, in *Estes,* force was used to defeat the victim's efforts to regain the property as the defendant attempted to carry it away. For the *Estes* court, whether the property was acquired peacefully from the owner or outside his presence was not determinative. The court reasoned that because robbery is a continuing offense, the later use of force to retain the property in the victim's presence renders the actions a robbery, "regardless of the means by which defendant originally acquired the property." (*Id.* at p. 28.)

Defendant nevertheless asserts that *Estes*'s immediate presence analysis, based on events in the parking lot, is dicta because the security guard

watched Estes take the clothing in the store. (See *Hayes, supra*, 52 Cal.3d at pp. 626–627.) Although the Court of Appeal might have reasoned that the immediate presence element was satisfied by the security guard's observations in the store, it did not. As the Court of Appeal here stated, "[T]he [*Estes*] court squarely pegged its holding to the fact the defendant forcibly 'resisted the security guard's efforts to retake the property and used that force to remove the items from the guard's immediate presence.' ([*Estes, supra,*] at p. 27.)" The robbery conviction was upheld based on defendant's forceful retention of property in the guard's presence while in the parking lot.

*Estes*'s analysis of immediate presence was followed 20 years later in *Miller v. Superior Court* (2004) 115 Cal.App.4th 216 [8 Cal.Rptr.3d 872] (*Miller*). In *Miller,* the victim changed into his swimming trunks in a public restroom at the beach. After taking a few steps outside, he realized he had left his pants in the restroom stall. His wallet, with a Velcro fastener, was inside his pants. The victim returned to the stall, but the pants were gone. He then heard the sound of Velcro being opened in another stall. The victim peered over the door to see Miller shielding something from his view. The victim waited 15 to 20 minutes for Miller to come out of the stall. When the victim's friend came into the restroom, the victim explained what had happened. The friend knocked on the door of Miller's stall and demanded that he return the wallet. Miller tried to force his way out of the restroom but was blocked by the victim and his friend. The three of them struggled and Miller eventually returned the wallet. (*Id.* at pp. 219–220.)

The trial court denied Miller's section 995 motion to dismiss the robbery charge. In a petition for a writ of prohibition, Miller challenged the denial, arguing there was no evidence that property was taken from the victim's immediate presence. (*Miller, supra*, 115 Cal.App.4th at p. 220.) The Court of Appeal majority rejected his argument: "Pursuant to the long-standing principles announced in *Estes,* Miller's use of force to retain the property after [the victim] confronted him while he was attempting to get away with [the victim's] money was sufficient to support the assertion of a robbery charge against him. In such circumstances, [the victim] could reasonably 'have expected to take effective steps to retain control over his property' and thus the immediate presence requirement is satisfied. [Citations.]" (*Id.* at p. 224.) Relying on *Estes,* the majority concluded that the immediate presence element of robbery may "be supplied after the defendant has initially gained possession of the victim's property." (*Miller*, at p. 224.)

As noted, we cited *Estes* with approval in *Cooper* for its discussion regarding the temporal aspect of the force and fear element of robbery. (*Cooper, supra*, 53 Cal.3d at p. 1165, fn. 8.) We did not address *Estes*'s analysis of "immediate presence." We do so here and find it consistent with California's approach to the law of robbery.

Defendant argues that any expansion of the definition of robbery is within the exclusive purview of the Legislature, not the courts. No expansion is involved. California has described robbery as a continuing offense for decades. While some jurisdictions have enacted statutes specifically adopting this continuous offense theory of robbery,[6] California and other states have construed their existing robbery statutes as establishing a continuing offense.[7]

■   Under the language of section 211, the phrases "person or immediate presence" and "force or fear" both refer to the "taking" of personal property. The force or fear element of robbery can be satisfied during either the caption or the asportation phase of the taking. (*Anderson, supra*, 64 Cal.2d at p. 638; *Estes, supra*, 147 Cal.App.3d at p. 28.) By the same logic, the immediate presence element can be satisfied at any point during the taking. No legislative amendment to section 211 is necessary to support this conclusion.

*People v. Nguyen* (2000) 24 Cal.4th 756 [102 Cal.Rptr.2d 548, 14 P.3d 221] (*Nguyen*), on which defendant relies, is not to the contrary. In *Nguyen*, four codefendants brandishing guns entered a business while employees were celebrating a birthday in the lunchroom. The husband of one employee attended the celebration as a visitor to the business. The defendants took computer equipment belonging to the business, along with money and identification from the employees. At trial, the visitor did not testify. The defendants challenged their convictions for robbing the visitor, arguing there was insufficient evidence that any property had been taken from him. The Court of Appeal affirmed, holding that a person need not have been in possession of the property taken to be the victim of a robbery. It concluded that taking the business computers from the presence of the visitor was sufficient to establish a robbery of him. (*Id.* at pp. 758–759.)

We reversed the judgment of the Court of Appeal to the extent it affirmed convictions for robbery of the visitor. We stated that despite section 211's

---

[6] See *State v. Moore* (Ct.App. 2007) 374 S.C. 468 [649 S.E.2d 84, 90], for an "exhaustive review" therein of jurisdictions adopting the "continuous offense theory" of robbery by statute.

[7] See, e.g., *Ball v. State* (1997) 347 Md. 156 [699 A.2d 1170, 1185] ("The mere fact that some asportation has occurred before the use of force does not mean that the perpetrator is thereafter not guilty of the offense of robbery. . . . [When] . . . the use of force enables the accused to retain possession of the property in the face of immediate resistance from the victim, then the taking is properly considered a robbery."); *People v. Bartowsheski* (Colo. 1983) 661 P.2d 235, 244 ("The gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of a transaction culminating in the taking of property from the victim's person or presence. [Citations.] There is no requirement that the application of force or intimidation must be virtually contemporaneous with the taking."); *People v. Kennedy* (1973) 10 Ill.App.3d 519 [294 N.E.2d 788, 790] ("while the taking may be without force, the offense is robbery if the departure with the property is accomplished by the use of force").

express language requiring that property be taken "from 'the possession of another,' " "the Court of Appeal [erroneously] concluded that defendant could be convicted of robbing [the visitor] based upon the taking of property from the business, whether or not [the visitor] had a possessory interest over the merchandise taken from the business." (*Nguyen, supra,* 24 Cal.4th at pp. 759–760.)

In *Nguyen,* we observed that section 222.1 of the Model Penal Code avoids the problem of possessory interest "by defining robbery to include the use of force or fear against *any* person during the commission of a theft." (*Nguyen, supra,* 24 Cal.4th at p. 763.)[8] We emphasized that the language of California's section 211 is different: "Section 211 reflects, instead, the traditional approach that limits victims of robbery to those persons in either actual or constructive possession of the property taken. We take no position on which of these differing approaches is preferable. Our Legislature has adopted the traditional approach, as reflected in the language of section 211. It is up to the Legislature to implement any change that may be desirable." (*Nguyen,* at p. 764.) Accordingly we declined to extend the definition of robbery to include a forceful taking from the presence of a person, like the visitor, who had no possessory interest in the property taken.

Here, by concluding that the "immediate presence" element of robbery may be satisfied during the asportation phase, even when the victim is not present at the time the defendant gains possession of the property, we do not extend the statutory language. Decades of case law have made clear that robbery in California is a continuing offense, the "taking" comprising asportation as well as caption.

Defendant nevertheless contends that this interpretation of section 211 conflicts with the following passage in *Cooper:* "In determining the duration of the asportation, we reject the argument that commission of the robbery necessarily ends once the loot is removed from the 'immediate presence' of the victim. Although the 'immediate presence' language comes directly from section 211, this language does not pertain to the *duration* of robbery. Section 211 defines robbery as 'the felonious taking of personal property in the possession of another, *from his person or immediate presence . . . .*' (Italics added.) Taking from the 'person' and from the ·'immediate presence' are alternatives. These terms are spatially, rather than temporally, descriptive.

---

[8] Section 222.1 of the Model Penal Code provides: "(1) . . . A person is guilty of robbery if, in the course of committing a theft, he: [¶] (a) inflicts serious bodily injury upon another; or [¶] (b) threatens another with or purposely puts him in fear of immediate serious bodily injury; or [¶] (c) commits or threatens immediately to commit any felony of the first or second degree. [¶] An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission."

They refer to the area *from which* the property is taken, not *how far* it is taken. [Citations.] Put another way, these limitations on the scope of the robbery statute relate to the 'gaining possession' component of the taking as distinct from the 'carrying away' component." (*Cooper, supra,* 53 Cal.3d at p. 1166.)

According to defendant, *Cooper* demonstrates that the "immediate presence" element of robbery relates only to the space from which the perpetrator initially gains possession of the victim's property. Defendant reads this passage too broadly. Its final sentence is simply a restatement of the preceding sentence, about which, under the facts of *Cooper,* there is no dispute. *Cooper* does not purport to limit the *time* during which the property must be in the victim's presence. That requirement may be satisfied, as in *Cooper,* at the moment of caption. It may also be satisfied, as in *Estes, supra,* 147 Cal.App.3d 23, during asportation.

Finally, defendant relies on *Hayes, supra,* 52 Cal.3d 577, to argue that permitting the "immediate presence" element to be satisfied during the asportation phase renders the element devoid of meaning and redundant of the "force or fear" element. *Hayes* does not support this proposition. Hayes killed the manager of a residential hotel in one of the guest rooms and left him there, bound with coat hangers. He then went to the manager's office and living quarters, located 107 feet away, and ransacked them, taking several cartons of cigarettes and some cash. We reversed the robbery conviction and special circumstances finding because the jury was misinstructed. During deliberations the jury had asked for clarification of the meaning of "immediate presence" as used in the robbery instruction. In response, the court gave a special instruction: " 'An act of robbery can be said to have occurred in the victim's immediate presence as long as the victim perceived *any* overt act connected with the commission of the offense.' " (*Id.* at pp. 627–628, italics added.)

This instruction was erroneous because it "permitted the jury to find the 'immediate presence' element of robbery if any of the acts mentioned in the general definition of robbery occurred in the victim's presence." (*Hayes, supra,* 52 Cal.3d at p. 628.) While the distance of 107 feet from the victim's bound body may or may not have been found by the jury to have been sufficiently within the victim's immediate presence, the jury was relieved of making such a finding because the special instruction allowed them to conclude that the "overt act" of assault was all that was necessary to support the robbery count. Under the particular facts of *Hayes,* we concluded: "The

special instruction thus rendered the 'immediate presence' element devoid of all independent meaning, making it redundant with the 'force or fear' element." (*Id.* at p. 628.) *Hayes* makes clear, as we affirm here, that "force or fear" and "immediate presence" are separate elements, both of which must be established to prove a robbery. *Hayes* does not stand for the proposition that the immediate presence element may not be satisfied during asportation. A victim who tries to stop a thief from getting away with his property *is* in the presence of the property.[9]

■ Our holding that the crime of robbery occurs when property is forcefully retained in the victim's presence, even when the victim was not present at its initial caption, is completely consistent with the Legislature's decision to treat robbery as an aggravated larceny. Although classified in the Penal Code as a crime against the person, robbery is actually a crime against both the person and property. (*People v. Tufunga, supra,* 21 Cal.4th at p. 948.) "Robbery violates the social interest in the safety and security of the person as well as the social interest in the protection of property rights." (Perkins, *supra,* at p. 350.) Both interests are implicated when a victim attempts to regain property from a perpetrator who is carrying it away, even if the victim was absent at the time of the initial theft.

Defendant argues that "the law does not encourage vigilantism and citizens are ill equipped to engage in law enforcement." Neither does the law encourage theft, or require that a citizen sit meekly by while a violent felon makes off with the victim's property. "When the perpetrator and victim remain in close proximity, a reasonable assumption is that, if not prevented from doing so, the victim will attempt to reclaim his or her property." (*People v. Flynn, supra,* 77 Cal.App.4th at p. 772.) We reject any effort by defendant to shift the blame to the victim. It is the conduct of the perpetrator who resorts to violence to further his theft, and not the decision of the victim to confront the perpetrator, that should be analyzed in considering whether a robbery has occurred. As we observed in *People v. Ramos* (1982) 30 Cal.3d

---

[9] Even viewed more broadly, defendant's argument is without merit. Our holding today does not render the "immediate presence" element duplicative of the "force or fear" requirement. There are circumstances in which a victim could be placed in fear or subjected to force while his property is stolen from a location beyond his immediate presence. In *Hayes,* for example, we described a scenario in which culprits enter the victim's home and compel him to reveal the combination of a safe located in his office miles away. The culprits then convey the combination to a confederate in the office who opens the safe while the victim remains at a distant location. (*Hayes, supra,* 52 Cal.3d at p. 627.) Conversely, a thief could certainly seize property from the victim's immediate presence and carry it away without ever resorting to force or fear. Thus, our holding today does not run afoul of the rule that "interpretations that render statutory terms meaningless as surplusage are to be avoided." (*People v. Hudson* (2006) 38 Cal.4th 1002, 1010 [44 Cal.Rptr.3d 632, 136 P.3d 168].)

553, 589 [180 Cal.Rptr. 266, 639 P.2d 908], "the central element of the crime of robbery [is] the force or fear applied to the individual victim in order to deprive him of his property." That deprivation of property occurs whether a perpetrator relies on force or fear to gain possession or to maintain possession against a victim who encounters him for the first time as he carries away the loot.

### D. Sufficiency of the Evidence of Robbery

Here, there is sufficient evidence from which the jury could find that defendant used force to retain the stolen money that was in Baltazar's immediate presence when the force was used. In resolving sufficiency of the evidence claims, "an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128 [113 Cal.Rptr.2d 27, 33 P.3d 450].)

██ The evidence supports the jury's determination that defendant used force to retain the property, and sufficiently satisfies the immediate presence element. While Baltazar did not confront defendant inside the restaurant, he followed in his truck after defendant left carrying the money in his backpack. When defendant realized he was being followed, he fired two shots at Baltazar from a distance of 100 to 150 feet. As the Court of Appeal stated, "[I]f not overcome by [defendant's] resistance, Baltazar could have caught up to him . . . . The only reason this didn't happen is that [defendant]—and his pistol—didn't let it. [Defendant] should not be rewarded for taking violent actions that prevented Baltazar from getting any closer to him. It would certainly be anomalous to say a robbery occurs if you allow the victim to catch up with you and then hit him, but not if you keep him away by shooting at him."

In *Hayes, supra,* 52 Cal.3d 577, the room in which the victim was killed was 107 feet from the location of the stolen property. We observed that a reasonable trier of fact, properly instructed, could conclude the immediate presence element was met. (*Id.* at pp. 628–629.) In *People v. Webster, supra,* 54 Cal.3d 411, we concluded that a reasonable trier of fact could find the immediate presence requirement satisfied when the distance between the stolen property and the murder scene was a quarter of a mile. (*Id.* at p. 440.) The parties' distance from each other at the time of this shooting was not so great as to preclude defendant's conviction for robbery.

### III. Disposition

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring.—I concur fully in the majority opinion. I write separately to reiterate my continuing disagreement with the holding of *People v. Cooper* (1991) 53 Cal.3d 1158 [282 Cal.Rptr. 450, 811 P.2d 742] (*Cooper*), a decision cited and discussed by the majority, and to explain how the issue presented here differs from the issue decided in *Cooper.*

*Cooper* addressed the scope of accomplice liability for the crime of robbery and, more specifically, the "late joiner" problem. There, defendant Cooper drove his two codefendants to a shopping center parking lot. (*Cooper, supra,* 53 Cal.3d at p. 1161.) The codefendants ran across the parking lot, knocked down an 89-year-old shopper, stole his wallet, and returned to Cooper's car. (*Ibid.*) Cooper "hurriedly drove away." (*Ibid.*) At Cooper's ensuing trial, the prosecution presented evidence supporting an inference that Cooper had participated in the planning of the robbery and had agreed in advance to act as the "getaway" driver. (*Id.* at p. 1179 (dis. opn. of Kennard, J.).) During argument to the jury, however, the prosecutor said that the defendant was guilty of robbery if he knowingly helped his codefendants escape with the victim's property, regardless of whether the defendant knew beforehand that his codefendants were planning a robbery. (*Id.* at p. 1178 (dis. opn. of Kennard, J.).) The trial court's instructions reinforced the prosecutor's argument. (*Id.* at pp. 1162–1163.) The jury convicted the defendant, and he appealed. (*Id.* at p. 1163.) The Court of Appeal reversed the conviction, and this court granted review. (*Ibid.*)

The majority in *Cooper* concluded that the defendant had been properly convicted because "a getaway driver who has no prior knowledge of a robbery, but who forms the intent to aid in carrying away the loot during [its] asportation, may properly be found liable as an aider and abettor of the robbery." (*Cooper, supra,* 53 Cal.3d at p. 1161.) Disagreeing with that holding, I pointed out that it "finds no support either in the statutory language or in the previous decisions of this court," that it "is inconsistent with the rule that a person who aids an escaping felon is an accessory after the fact" rather than a principal, and that it would "lead to absurd results because criminal liability will bear little or no relationship to the culpability of the offender." (*Id.* at p. 1178 (dis. opn. of Kennard, J.).) My views on that issue have not changed.

Here, however, the issue is not accomplice liability but the definition of robbery. More specifically, the issue is whether a robbery has been committed when, after wrongfully taking another's property, before reaching a place of temporary safety, and while in the immediate presence of a person legally entitled to possession of that property, the thief uses force against that person. The majority's decision that the described offense is robbery is properly grounded in the statutory definition of robbery and in the prior decisions of this court and the Courts of Appeal, and the holding here will produce results that are rationally related to the offender's culpability. Accordingly, I concur.