Filed 9/11/13  P. v. Castro CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B246557 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA124235) |
| v. | |
| DIEGO VEGA CASTRO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John A. Torribio, Judge.  Affirmed as modified with directions.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Susan Sullivan Pithey, Deputy Attorney General, for Plaintiff and Respondent.

## I. INTRODUCTION

A jury convicted defendant, Diego Vega Castro, of: attempted robbery (Pen. Code, §§ 664, 211, count 1)[1]; second degree commercial burglary (§ 459, count 2); controlled substance possession (Health & Saf. Code, § 11377, subd. (a), count 3); and second degree robbery (§ 211, count 4). The jury found defendant used a knife in the commission of the attempted robbery. (§ 12022, subd. (b)(1).) The trial court struck the knife use enhancement and sentenced defendant to three years in state prison. We modify the judgment and affirm as modified.

## II. EVIDENCE

### A. The Prosecution Case

#### 1. January 19, 2012

On January 19, 2012, defendant attempted to steal two Cannon cameras, each worth $400, from a Walmart store in the City of Lakewood. A struggle ensued after he was confronted by store personnel. During the struggle, defendant dropped the bags containing the cameras. The struggle ended when defendant brandished a knife. Defendant ran to a white truck and fled. Store personnel obtained the truck's license plate number.

Loss prevention officer Jose Pena described the incident with defendant. Defendant and a companion were spotted stealing items inside the Lakewood Walmart store. Mr. Pena was waiting outside the store when defendant and the unidentified accomplice exited. Mr. Pena identified himself verbally and displayed his badge. Defendant instantly started to struggle with Mr. Pena. Mr. Pena grabbed defendant's

---

[1] Further statutory references are to the Penal Code except where otherwise noted.

upper shirt area. Defendant took hold of Mr. Pena. Mr. Pena testified: "As soon as I say 'asset protection Walmart security,' he instantly tries to struggle with me. We both grab each other, start struggling." Mr. Pena pushed defendant up against the exit door. Mr. Pena testified, "[I used] enough force to try to control him, to hold him." Mr. Pena's partner approached and joined the struggle. Mr. Pena got behind defendant. Mr. Pena's partner yelled, "'Knife, knife, knife.'" Mr. Pena saw a four to five-inch blade in defendant's right hand. Mr. Pena pushed defendant away and stepped back. Defendant swung the knife at Mr. Pena and then made two forward stabbing motions. While still pointing the knife at Mr. Pena, defendant ran away. During the struggle, the bags containing the cameras had ripped open. The cameras fell to the ground. Defendant dropped the cameras after the struggle with Mr. Pena commenced. Mr. Pena testified it was "[p]robably towards the end of the struggle" that the parcels tore open. Defendant did not have the bags in his hands when he brandished the knife.

On January 19, 2012, or in the early morning hours of January 20, 2012, Officer Daniel Melendez stopped a truck driven by defendant. Officer Melendez searched defendant and found a folding knife in defendant's pants pocket. Defendant also possessed a solid substance containing methamphetamine.

## 2. March 17, 2012

On March 17, 2012, defendant attempted to steal three shirts and one pair of women's shoes from a Nordstrom Rack store in the Lakewood Mall. He was confronted by store personnel after he exited without paying for the items. During an ensuing struggle, defendant dropped the bag containing the shirts. Defendant pulled a knife from his pocket. He fled the scene with the pair of women's shoes tucked in his waistband.

Loss prevention officer Vikram Gadiok described the altercation with defendant. Mr. Gadiok approached defendant 5 to 10 feet from the store's exit. The loss prevention manager, Michael Salazar, was with Mr. Gadiok. Mr. Gadiok identified himself verbally and displayed his badge. Mr. Gadiok said they needed to talk about the unpaid

3

merchandise. Mr. Gadiok asked defendant to come back inside the store. Defendant looked surprised and resisted. It was clear defendant did not want to return to the store. Mr. Salazar grabbed defendant's arms from behind. Mr. Gadiok intended to handcuff defendant once Mr. Salazar got control of the situation. Defendant pulled a red screwdriver from his right pocket. The screwdriver fell to the ground. Defendant then pulled a folding knife from the same pocket. Mr. Gadiok told Mr. Salazar that defendant had a knife. Mr. Salazar released defendant. Defendant ran to a green vehicle and left the area. Ten seconds into the encounter, defendant had dropped the shopping bag. He dropped it before he ran away.

Mr. Salazar testified that after they identified themselves as loss prevention officers, defendant became resistant. Mr. Salazar could see defendant was about to walk away. Mr. Salazar immediately grabbed defendant. Mr. Salazar testified: "He kind of moves to the side. At that point I grab him and put [his] arms behind his back." Mr. Gadiok and Mr. Salazar tried to handcuff defendant. Mr. Salazar had control of defendant's arms. Defendant's arms were held behind his back. Mr. Gadiok tried to handcuff defendant. As this was occurring, defendant was trying to get out of Mr. Salazar's grasp. Mr. Salazar pushed defendant against a pillar. At the same time, Mr. Salazar leaned his body against defendant who had dropped the shopping bag. Mr. Salazar heard Mr. Gadiok say defendant had a knife. Mr. Salazar released defendant who ran off and got into a vehicle.

B. The Defense Case

Defendant testified in his own defense. He admitted he was a methamphetamine user. He admitted he was guilty of the drug offense charged in count 3. He admitted attempting to steal from the Nordstrom Rack and Walmart stores. He denied, however, that he had taken a pair of women's shoes from the Nordstrom Rack store. Defendant denied that he was in possession of a knife at any time. Defendant's denial of possessing a knife extended to the time of his January 19, 2012 arrest. Defendant testified that on

4

both occasions it was the store personnel who were the aggressors. Defendant said that in both instances he dropped the stolen merchandise as soon as he was physically confronted by the store employees. With respect to the Walmart robbery, defendant testified, "As soon as they tried to put my hands behind my back, I dropped [the bags]." During the struggle, defendant was not holding the bags. Defendant stated, "As soon as [Mr. Pena] put [his] hands on me, the bag swung out of my hand . . . ."

## C. Jury Instructions

The jury was instructed that robbery has five elements: "To prove that the defendant is guilty of [robbery], the People must prove that: [¶] 1. The defendant took property that was not (his/her) own; [¶] 2. The property was taken from another person's possession and immediate presence; [¶] 3. The property was taken against that person's will; [¶] 4. *The defendant used force or fear* to take the property or *to prevent the person from resisting*; [¶] AND [¶] 5. *When the defendant used force* or fear to take the property, *(he/she) intended (to deprive the owner of it permanently/* or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property). [¶] *The defendant's intent to take the property must have been formed before or during the time (he/she) used force* or fear. If the defendant did not form this required intent until after using the force or fear, then (he/she) did not commit robbery." (Italics added.) The jury was further instructed that attempted robbery requires evidence that: "1. The defendant took a direct but ineffective step toward committing robbery [¶] AND [¶] 2. The defendant intended to commit robbery." (Italics added.)

The jury was also instructed on theft by larceny. "The following is the definition of petit theft. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took possession of property owned by someone else; [¶] 2. The defendant took the property without the owner's or owner's agent's consent; [¶] 3. When the defendant took the property (he/she) intended (to deprive the owner of it

5

permanently/ or to remove it from the owner's or owner's agent's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property); [¶] AND [¶] The defendant moved the property, even a small distance, and kept it for any period of time, however brief."

D. Defense Counsel's Argument

While arguing to the jury, defense counsel, Greg Gonzales, asserted: defendant did not use force to prevent store personnel from retaking the property; instead, defendant dropped the stolen property as soon as loss prevention officers confronted him; and defendant used force only to escape. Mr. Gonzales argued: "In this case, even without Mr. Castro's testimony, this is not a robbery because no force o[r] fear was used after he abandoned the property. The property was no longer in Mr. Castro's possession. [¶] As you heard with Pena, Pena contacted him outside the store where he identified himself, as [loss prevention] officer or not. He struck him. He flew back against the glass and force was used. After that, whether or not you believe he had a knife or not, that's solely up to you. You have two different people who don't know each other say that he had a knife. [¶] If he had a knife and that knife involved Mr. Pena that was used to escape to get out of there. Again, he didn't have property. Let's say when he made the swipes. Pena said he made swipes and jabs. Let's say if he made the swipes and jabs bare handed, there is no property. The property is over there. So he is trying to escape. [¶] Let's say he does the swipes and jabs but the property is still in his hand. He's then using physical force to retain the property or keep the property. If he was doing swipes and jabs to get the property, but he's not doing that. [¶] . . . [¶] . . . The People agree the bag was dropped [at Nordstrom Rack] too when confronted with Gadiok and Salazar. [And defendant did not steal any women's shoes and did not have them in his waistband.] . . . [¶] If there was any force or fear, any element of that, it was used for him to get out of there. It was not used for him to get out of there with property. . . . [¶] . . . [¶] . . . If any force was

6

used by Mr. Castro, it was used to get out of there, not to get beat up, and to get away from the situation he was in, or as drug users do, they just run."

## III. DISCUSSION

### A. Instruction Issue

Defendant contends the trial court had a sua sponte duty to give a jury instruction consistent with his defense. We disagree. Moreover, we find no prejudice.

Robbery is a type of aggravated theft by larceny. (*People v. Gomez* (2008) 43 Cal.4th 249, 254-257; *People v. Hodges* (2013) 213 Cal.App.4th 531, 539-540.) As our Supreme Court has explained: "To elevate larceny to robbery, the taking must be accomplished by force or fear and the property must be taken from the victim or in his presence." (*People v. Gomez, supra,* 43 Cal.4th at p. 254, fn. omitted.) As our Supreme Court further explained: "[A] robbery can be accomplished even if the property was peacefully or duplicitously acquired, if force or fear was used to carry it away." (*People v. Gomez, supra,* 43 Cal.4th at p. 256; see *People v. Williams* (2013) __ Cal.4th __, __ [2013 LEXIS 6899 *18].) As our Supreme Court held in *People v. McKinnon* (2011) 52 Cal.4th 610, 686-687: "'Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211; see *People v. Scott* (2009) 45 Cal.4th 743, 749 [].) A defendant who does not use force or fear in the initial taking of the property may nonetheless be guilty of robbery if he uses force or fear to retain it or carry it away in the victim's presence. (*People v. Gomez*[, *supra*,] 43 Cal.4th [at pp. 256, 264]; *People v. Estes* (1983) 147 Cal.App.3d 27.)' (*People v. Bradford* (2010) 187 Cal.App.4th 1345, 1349.) That is, '[a] robbery is not completed at the moment the robber obtains possession of the stolen property. The crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property . . . . [A] robbery occurs

7

when defendant uses force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence regardless of the means by which defendant originally acquired the property.' (*People v. Estes*[, *supra,*] 147 Cal.App.3d [at pp.] 27–28.)" (Accord, *People v. Gomez, supra,* 43 Cal.4th at pp. 255-256; *People v. Webster* (1991) 54 Cal.3d 411, 441; *People v. Anderson* (1966) 64 Cal.2d 633, 638-639.)  In other words, a defendant is guilty of robbery if he or she uses force or fear to retain possession of the property and to escape with it.  This rule of robbery culpability applies even if force or fear is not used during the initial taking of the property.  (*People v. Gomez, supra,* 43 Cal.4th at p. 256; *People v. Webster, supra,* 54 Cal.3d at p. 441; *People v. Hodges, supra,* 213 Cal.App.4th at pp. 541-543; *People v. Pham* (1993) 15 Cal.App.4th 61, 64-67; *People v. Estes, supra,* 147 Cal.App.3d at p. 28.)

Defendant argues the trial court had a sua sponte duty to instruct that if he abandoned the stolen property *in advance* of using force, he was guilty of only theft not robbery.  Our review is de novo.  (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 642; *People v. Russell* (2006) 144 Cal.App.4th 1415, 1424; see *People v. Posey* (2004) 32 Cal.4th 193, 218; *People v. Berryman* (1993) 6 Cal.4th 1048, 1089, disapproved on another point in *People v. Hill* (1998) 17 Cal.4th 800, 822-823.)  The trial court did not have a sua sponte duty to so instruct.  As our Supreme Court has held:  "'[W]hen a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties.  While a court may well have a duty to give a "pinpoint" instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such "pinpoint" instructions are not required to be given *sua sponte* and must be given only upon request.  [Citations.]'" (*People v. Saille* (1991) 54 Cal.3d 1103, 1117; accord, *People v. Anderson* (2011) 51 Cal.4th 989, 996-997.)  Here, the prosecution presented evidence and argument defendant used force to prevent store personnel from retrieving the stolen merchandise and to retain possession of it.  Defendant presented evidence and argument he dropped the stolen goods when confronted by store personnel and used force only to escape.  In other words,

8

defendant sought to negate the prosecution's proof of the force element of robbery. Under these circumstances, the trial court had no sua sponte duty to instruct as defendant asserts. (*People v. Anderson, supra,* 51 Cal.4th at pp. 996-997; *People v. Saille, supra,* 54 Cal.3d at p. 1117.)

The failure to give a legally correct pinpoint instruction is a state law error subject to review under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Pearson* (2012) 53 Cal.4th 306, 325 & fn. 9; *People v. Hughes* (2002) 27 Cal.4th 287, 362-363; see *People v. Wilkins* (2013) 56 Cal.4th 333, 348-349.) Here, even if there was error, it is not reasonably probable the result would have been more favorable to defendant. The jury was properly instructed on the elements of robbery and of theft by larceny. A reasonable juror would have understood that a theft was elevated to a robbery by the use of force in: taking the property; preventing a person from resisting the taking of the property; or resisting an attempt by store personnel to regain possession of the property. In closing argument, Mr. Gonzales argued defendant was not guilty of robbery because the stolen merchandise was abandoned before the two fracases broke out. Mr. Gonzales argued defendant used force not to retain the items taken but only to escape. But there was no evidence defendant intentionally and voluntarily relinquished possession of the stolen merchandise. He did not offer verbally or by his actions to return the items to store personnel. Moreover, the jury necessarily resolved the use of force issue adversely to defendant when it chose between robbery and theft by larceny. Had the jury believed defendant abandoned the stolen items and resorted to force only to make his escape, it would have convicted him of theft by larceny.

Nor was defense counsel ineffective for failing to request a pinpoint instruction. The pivotal issue was properly before the jury through correct instruction and argument. Defense counsel could reasonably conclude further instruction was unnecessary. (*People v. Castillo* (1997) 16 Cal.4th 1009, 1018; see *People v. Smithey* (1999) 20 Cal.4th 936, 986-987; *People v. Dominguez* (1992) 11 Cal.App.4th 1342, 1352-1353.) Even if the pinpoint instruction should have been requested, there is no reasonable probability of a different result. (*Strickland v. Washington* (1984) 466 U.S. 668, 694; *People v. Lawley*

9

(2002) 27 Cal.4th 102, 136; see *People v. Linton* (2013) 56 Cal.4th 1146, 1167 [defendant must show both deficient performance and prejudice].)  Having found no prejudice in the absence of the defense instruction, we reject defendant's ineffective assistance claim.  (*People v. Carter* (2003) 30 Cal.4th 1166, 1222; *People v. Lewis* (2001) 25 Cal.4th 610, 646.)

## B.  Sentencing And Abstract Of Judgment

The trial court orally imposed a $40 court operations assessment (§ 1465.8, subd. (a)(1)) and a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)) as to counts 1, 3 and 4, but not count 2.  As the Attorney General correctly contends, the trial court should have imposed those assessments on count 2 notwithstanding the stay imposed pursuant to section 654, subdivision (a).  (*People v. Crabtree* (2009) 169 Cal.App.4th 1293, 1327; *People v. Crittle* (2007) 154 Cal.App.4th 368, 370-371.)  The judgment must be modified to so provide.  (*People v. Sencion* (2012) 211 Cal.App.4th 480, 484-485; *People v. Crabtree, supra,* 169 Cal.App.4th at p. 1328.)

Additionally, because defendant was convicted of controlled substance possession (Health & Saf. Code, § 11377, subd. (a)), the trial court should have imposed a $50 criminal laboratory analysis fee (Health & Saf. Code, § 11372.5, subd. (a)) plus penalties and a surcharge.  (*People v. Sharret* (2011) 191 Cal.App.4th 859, 863-864; see *People v. Woods* (2010) 191 Cal.App.4th 269, 274.)  The criminal laboratory analysis fee was subject to:  $50 state penalty (§ 1464, subd. (a)(1)); $35 county penalty (Gov. Code, § 76000, subd. (a)(1)); $10 state surcharge (Pen. Code, § 1465.7, subd. (a)); $25 state court construction penalty (Gov. Code § 70372, subd. (a)(1), Stats. 2011, ch. 304, § 5, eff. Jan. 1, 2012); $10 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1)); $5 deoxyribonucleic acid penalty (Gov. Code, § 76104.6, subd. (a)(1)); and $15 state-only deoxyribonucleic acid penalty (Gov. Code, § 76104.7, subd. (a); Stats. 2011, ch. 36, § 16, eff. June 30, 2011–June 26, 2012).

## IV.  DISPOSITION

The judgment is modified to impose a $40 court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)) and a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)) as to count 2.  The judgment is further modified to impose a:  $50 criminal laboratory analysis fee (Health & Saf. Code, § 11375.2, subd. (a)); $50 state penalty (Pen. Code, § 1464, subd. (a)(1)); $35 county penalty (Gov. Code, § 76000, subd. (a)(1)); $10 state surcharge (Pen. Code, § 1465.7, subd. (a)); $25 state court construction penalty (Gov. Code § 70372, subd. (a)(1)); $10 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1)); $5 deoxyribonucleic acid penalty (Gov. Code, § 76104.6, subd. (a)(1)); and $15 state-only deoxyribonucleic acid penalty (Gov. Code, § 76104.7, subd. (a)).  In all other respects, the judgment is affirmed.  Upon remittitur issuance, the clerk of the superior court is to prepare an amended abstract of judgment that includes the $50 criminal laboratory analysis fee plus the penalties and the surcharge.  The clerk of the superior court is to deliver a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P.J.

We concur:

MOSK, J.                                    KUMAR, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11