Filed 3/20/13  In re Niko P. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re NIKO P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>NIKO P.,<br><br>    Defendant and Appellant. | G045909<br><br>(Super. Ct. No. DL040877)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Jacki C. Brown, Judge.  Affirmed in part, reversed in part.

Elizabeth Garfinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

The Orange County District Attorney filed a petition pursuant to Welfare and Institutions Code section 602, alleging Niko P. had committed robbery and receiving stolen property, among other offenses. The court found the allegations true and sentenced Niko P. to time served and probation. Niko P. argues there was insufficient evidence to support the robbery count, claiming that he had abandoned the property and reached a place of temporary safety before any force occurred. We disagree and find substantial evidence to uphold the robbery finding. We do agree that he cannot be convicted of receiving stolen property and robbery of the same property, however, and therefore order the adjudication on that count reversed.

I

FACTS

On August 5, 2011, Enrique Pallares and his uncle, Cesar Mora, were playing golf on a course in San Juan Capistrano. Pallares noticed Niko P. (Niko), who was with another male (Dalton D.) and a female. Mora saw them arrive from a nearby neighborhood. Niko and his companions were loud and smoking cigarettes near Pallares's golf cart. They were also drunk.

Pallares's black iPhone 4G was in the passenger-side cup holder in the golf cart. Pallares was on the green, about 15 to 20 yards away. While Pallares was lining up a putt, Mora saw Niko reach into the cart and take the phone from the cup holder. Mora yelled at Niko to leave the phone. Niko did not drop the phone, but instead he sprinted in the opposite direction from where he had entered the green. As Pallares finished his putt, he heard Mora yell and saw Mora pursue Niko across the green. He followed, and saw his phone in Niko's hand.

Mora chased Niko for approximately 40 yards before returning to the golf cart to secure the rest of their property. Pallares followed Niko for about 300 yards, then lost sight of him as he ran into a residential neighborhood. For 8 to 10 minutes, he spoke to several people in the neighborhood and alerted them to what had happened. Pallares

2

then returned to the golf course, and he and Mora decided to leave the course together and look for the phone.

After about 8 to 10 minutes, they returned to the neighborhood where Pallares had lost sight of Niko. Pallares and Mora walked around the neighborhood and soon found Niko and his friends standing in a side yard, behind a gate. Pallares yelled at Niko to give him his phone back, and Niko responded that he didn't know what he was talking about. Mora, who was about 30 feet away from Niko and his companions, also demanded the return of the phone. All three denied any knowledge of a phone.

Mora then unlatched the gate to the yard, and he and Pallares entered. Mora approached Niko, Dalton D., and Niko's older brother, who was also present. Dalton D., who was hosing off Niko with a garden hose, sprayed Mora, purportedly unintentionally. Mora took the hose and sprayed it at the three young men for approximately 10 seconds. They protested, telling Mora to go away and that he was trespassing. Mora kept demanding the phone. Niko and his companions threatened to call the police, and Mora invited them to do so.

Mora then attempted to leave the yard, and some pushing and shoving ensued, and punches were thrown. Pallares slipped while trying to leave the property, and while he was on the ground, Niko jumped on his back and attempted to choke him. Niko's brother, meanwhile, threatened Mora with a golf club while Mora was threatening Niko with a metal plant hanger. Eventually they both agreed to drop the items, and Pallares and Niko were separated.

The police arrived shortly thereafter. When Deputy Michael Rupley arrived, about 15 people were on the street. Niko admitted to Rupley that he had taken Paralles's phone, which Niko retrieved from a small bush about 50 yards away from his home, on the breezeway leading to the golf course. The phone was returned to Paralles.

3

On August 9, 2011, the Orange County District Attorney filed a petition pursuant to Welfare and Institutions Code section 602, alleging Niko committed second degree robbery, a felony (Pen. Code,[1] § 211; count one), aggravated assault, a felony (§ 245, subd. (a)(1); count two), brandishing a deadly weapon, a misdemeanor (§ 417, subd. (a)(1); count three); and battery, a misdemeanor (§ 242; count four).  The district attorney later amended the petition to add receiving stolen property, a felony (§ 496, subd. (a); count five).  Niko denied the allegations.

An adjudication hearing began on September 1, 2011.  At the close of the petitioner's evidence, the court granted Niko's motion to dismiss count three, denying the motion to dismiss other counts.  At the close of the hearing, the court concluded the petitioner had met its burden in proving the remaining counts.  The court declared Niko a ward of the court, sentencing him to time served (60 days), and placing him on probation.

II

DISCUSSION

A.  *Substantial Evidence of Robbery*

Niko argues the evidence was constitutionally insufficient to sustain the true finding on the robbery count.  We must view the evidence in the light most favorable to the judgment, drawing all reasonable deductions from the evidence in the judgment's favor.  We must accept all assessments of credibility as made by the trier of fact, then determine if substantial evidence exists to support each element of the offense.  (See *People v. Carpenter* (1997) 15 Cal.4th 312, 387.)  Before a verdict may be set aside for insufficiency of the evidence, a party must demonstrate "that upon no hypothesis whatever is there sufficient substantial evidence to support it."  (*People v. Redmond* (1969) 71 Cal.2d 745, 755; *People v. Bolin* (1998) 18 Cal.4th 297, 331.)

---

[1] Subsequent statutory references are to the Penal Code.

4

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Thus, the elements of robbery are (1) the taking of personal property (2) from a person or the person's immediate presence (3) by means of force or fear (4) with the intent to permanently deprive the person of the property. (*Ibid.; People v. Marshall* (1997) 15 Cal.4th 1, 34.) The "taking" element "has two aspects: (1) achieving possession of the property, known as 'caption,' and (2) carrying the property away, or 'asportation.'" (*People v. Gomez* (2008) 43 Cal.4th 249, 255 (*Gomez*).) Although the slightest movement may constitute asportation (*People v. Davis* (1998) 19 Cal.4th 301, 305), the robbery continues "as long as the loot is being carried away to a place of temporary safety." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165.) The "force or fear" element may occur at any point during which the property is being carried to a place of temporary safety, as the crime has not yet concluded. (*Gomez*, *supra*, 43 Cal.4th at p. 257.) Niko offers two arguments as to why the robbery count should be reversed.

### 1. *Place of Temporary Safety*

Niko argues that the robbery count must be reversed because he had reached a place of temporary safety before any force occurred. Thus, he argues, the theft was concluded without any force being used, and it was therefore not a robbery. In his argument that he had reached a place of temporary safety, he essentially argues that home is generally considered a place of temporary safety.[2] That may be so, but temporary safety is a question for the trier of fact. (*People v. Johnson* (1992) 5 Cal.App.4th 552,

---

[2] In his reply brief, Niko argues for the first time that asportation ended because he was no longer carrying the phone. This is a variation on his second argument regarding abandonment of the property, which we address *post*.

5

559-560 (*Johnson*).)[3] The "issue to be resolved is whether a robber had actually reached a place of temporary safety, not whether the defendant thought that he or she had reached such a location." (*Id.* at p. 560.)

In *Johnson,* the defendant committed robberies in San Mateo and fled in a stolen car. (*Johnson*, *supra*, 5 Cal.App.4th at pp. 555-556.) He drove a considerable distance, during which time police did not observe or follow him. Eventually an officer attempted to pull him over. (*Id.* at p. 556.) The defendant turned off the freeway and drove for eight or nine minutes in a residential area. During this period, he saw no one and thought he was safe. (*Ibid.*) Returning to the freeway, he was again spotted and pursued. He hit another car, killing the driver. (*Id.* at pp. 555, 557.) The accident occurred 30 minutes after the defendant fled the robbery scene, and 22 miles away from the robbery location. (*Id.* at p. 557.) The court concluded a reasonable jury, based on the evidence, could have concluded that the defendant was in continuous flight. (*Id.* at p. 561.)

Here, there was substantial evidence that Niko had not reached a place of temporary safety. He fled from victims who had already tried to chase him once. Less than a half-hour later, he was not ensconced *inside* his home and out of public view, but in a side yard clearly visible from the sidewalk. He was close both in time and space to the scene of the crime. "Temporary safety is not tested based on subjective impressions or recklessness of the robber but on an objective measure of safety following the initial taking. [Citation.]" (*People v. Haynes* (1998) 61 Cal.App.4th 1282, 1292.) The relative speed and ease with which Pallares and Mora found Niko demonstrate that he had not, objectively, reached a place of temporary safety. Thus, the court's determination on this point was supported by substantial evidence.

---

[3] We reject Niko's argument that *Johnson* is inapposite here because it involved a completed robbery and subsequent felony murder.

*2. Abandonment*

Niko also argues that he had abandoned the phone before any force occurred, and therefore the element of force was not satisfied. Unfortunately, Niko offers no evidence whatsoever to support this contention. The evidence demonstrated that the phone was not abandoned, but *hidden*, an entirely different concept. A reasonable trier of fact could conclude that hiding the phone under a bush, as opposed to, for example, hurling it away in the street or dropping it in a sewer, was evidence of his intent to retrieve it later. While it was hidden, therefore, the phone remained in Niko's control and constructive possession.

Once the "abandonment" contention is rejected, there is little left to this argument.[4] The use of force or fear can be present during either the initial caption or during asportation. (*Gomez*, *supra*, 43 Cal.4th at p. 261.) "[A] robbery occurs when defendant uses force or fear in resisting attempts to regain the property . . . regardless of the means by which defendant originally acquired the property." (*People v. Estes* (1983) 147 Cal.App.3d 23, 27-28.)

---

[4] For this reason, Niko's citation to the recent case, *People v. Hodges* (2013) 213 Cal.App.4th 531 is inapposite. In *Hodges*, the shoplifting defendant was confronted by store security in the parking lot. The defendant pushed the bag containing the property toward the security officer in a manner which shoved the officer back into a parked car, and then tried to escape. (*Id.* at pp. 535-536.) The appellate court found the trial court had answered a question on the nexus between abandoning the property and the use of force in a misleading manner, which amounted to an abuse of discretion. (*Id.* at pp. 541-542.) "This court's instruction was misleading because it allowed the jury to conclude defendant was guilty of robbery without regard to whether defendant intended to permanently deprive the owner of the property at the time the force or resistance occurred." (*Id.* at p. 543.) By attempting to give the property back to a store employee and escape, the defendant's intent to abandon the property was obvious. Here, the evidence was that Niko hid the phone in a place where it could easily be retrieved later, which is exactly what happened. Because the analysis in *Hodges* focuses on the abandonment of the property, which is not the situation in this case, it is simply inapplicable.

In *People v. Pham* (1993) 15 Cal.App.4th 61 (*Pham*), the victim saw the defendant in the back seat of his car, removing items through an opening into the trunk. As the victim approached, the defendant exited carrying a bag and started to flee. The victim gave chase and caught the defendant by his shirt. Defendant dropped the bag and began hitting the victim in the head. A friend of the victim caught up to the two men and grabbed the defendant, who continued to struggle with both of them. Eventually, defendant was subdued and the police arrived. They found property belonging to both men in the defendant's bag. (*Id.* at p. 64.)

The court rejected Pham's argument that because he had dropped the bag, the taking was not accomplished by force or fear. "Under the facts of this case, we conclude the asportation or carrying away of the property occurred when defendant removed the victims' property from [the] car and began to flee. The asportation continued while defendant struggled with the victims and prevented them from immediately recovering their goods. Contrary to defendant's contention, robbery does not require that the loot be carried away *after* the use of force or fear." (*Pham*, *supra*, 15 Cal.App.4th at p. 65; see also *Gomez*, *supra*, 43 Cal.4th at pp. 255-256.) Further, there was no requirement that the robber have manual possession of the property. (*Ibid.*)

Contrary to Niko's argument, *Pham* is on point here. As in *Pham*, Niko used force to struggle with the victims during the asportation phase of the robbery. The force was sufficient, and the fact that Niko was not in immediate physical possession of the phone was irrelevant. He was still in control of the phone and knew where it was, as evidenced by his rapid production of the phone once the police arrived. "Decades of case law have made clear that robbery in California is a continuing offense, the 'taking' comprising asportation as well as caption." (*Gomez*, *supra*, 43 Cal.4th at p. 262.)

"In robbery, the elements of larceny are intertwined with the aggravating elements to make up the more serious offense." (*Gomez*, *supra*, 43 Cal.4th at p. 254.) No policy purpose would be served by allowing a defendant to avoid a robbery

conviction if he secreted away the loot prior to engaging in force as opposed to afterwards. Here, the aggravating elements of taking the property by force or fear from the victim's immediate presence were satisfied. (§ 211.) Although the order in which they occurred is somewhat atypical, Niko is not entitled to the reward of a lesser offense as a result. Thus, we conclude the evidence was sufficient to sustain the robbery count.

*B. Receiving Stolen Property*

Niko contends, and respondent agrees, that he cannot be adjudicated of both receiving stolen property and robbery of the same property. We concur. Section 496, subdivision (a) states: "No person may be convicted both pursuant to this section and of the theft of the same property." (See also *People v. Smith* (2007) 40 Cal.4th 483, 522.) The proper course of action is to reverse the true finding on the receiving stolen property count and affirm the finding on the theft count. (*People v. Ceja* (2010) 49 Cal.4th 1, 6.)

III

DISPOSITION

The judgment is reversed as to count five, receiving stolen property. In all other respects, the judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


IKOLA, J.

9