Filed 4/28/16  P. v. Darnell CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>GARRY RONALD DARNELL,<br><br>　　　　Defendant and Appellant. | A140224<br><br>(San Mateo County<br>Super. Ct. Nos. SC076853; SC077133) |

Garry Ronald Darnell appeals from a judgment upon a jury verdict finding him guilty of first degree robbery (Pen. Code,[1] § 212.5); grand theft (§ 487); five counts of felony petty theft with a qualifying prior (§ 666); and one count of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)).  In a bifurcated proceeding, the court found true the allegations that the robbery constituted a serious and violent felony within the meaning of sections 1192.7, subdivision (c)(19) and 667.5, subdivision (c)(9), that defendant suffered seven prior convictions within the meaning of section 1203, subdivision (e)(4), and that he served two prior prison terms within the meaning of section 667.5, subdivision (b).  Defendant contends that the evidence is insufficient to support the robbery conviction and that the court erred in its instructions to the jury.  We affirm.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

1

# I.  FACTS

The evidence at trial showed that defendant committed five counts of felony petty theft on October 11, 2012 by stealing items from a number of unlocked cars parked in the Willows neighborhood in Menlo Park.  Defendant conceded his guilt of these offenses during closing argument.

The prosecutor also presented the following evidence:  At approximately 9:00 p.m. on October 11, 2012, Alyssa Haught was returning to her Oak Court home after picking up her son at school.  She parked her car in the driveway of her home and went into her home for a couple of minutes.  She left the car doors unlocked, leaving her purse and backpack containing her laptop computer.  When she returned to her car, she noticed that the inside dome light was on which was unusual as it should have been off—it stayed on for only a minute once the door was closed.  She looked around and saw defendant walking away from the car.  She followed him and noticed that he had her backpack in his hands.  He was also wearing a backpack.  She lost sight of him for a minute when he ducked behind a hedge adjacent to her neighbor's long driveway.  When she got to the hedge, she saw defendant leaning over her backpack.  She asked defendant, "Is that my backpack?"  Defendant stood up and angrily said, "No, Lady."  He left the backpack on the ground, pushed her very hard, and ran away quickly.  He knocked Haught over, and she fell to the ground.  Her hands bled, and she sustained bruising and scrapes.  She also injured her knee.  As defendant fled, Haught noticed that her wallet fell out of his backpack.  Defendant's hat had also fallen off as he ran.  Haught picked up both her wallet and the hat and ran to her house.  She was scared and yelled to her son to call 911.  She also called 911.

The police came to Haught's home.  The police told her that they might have located a suspect that matched the description she had given.  She accompanied the police for an in-field identification.  She identified the defendant as the perpetrator.  She was able to identify several items that were recovered by the police as items that were taken from her car.

2

The police took defendant to the Menlo Park holding facility. During the pre-booking process, defendant sat on a concrete bench and was handcuffed with one arm shackled to the wall. When the process was completed and defendant was moved, the police found a clear plastic piece of cellophane containing .04 grams of methamphetamine stuffed in between the corner of the wall and the bench. An officer saw defendant fidget as he was sitting on the bench, which led him to believe that he was trying to discard something.

## II. DISCUSSION

### 1. Sufficiency of the evidence

Section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by force or fear." (§ 211.) The crime of robbery includes the elements of a taking, caption—achieving possession of the property, and asportation—carrying the property away. (*People v. Gomez* (2008) 43 Cal.4th 249, 256 (*Gomez*).) The crime "occurs when property is forcefully retained in the victim's presence, even when the victim was not present at its initial caption." (*Id.* at p. 264.) Robbery is a continuing offense; it is not complete until the robber has reached a place of temporary safety. (*Id.* at p. 255; *People v. Estes* (1983) 147 Cal.App.3d 23, 28 (*Estes*).)

We review the judgment under the substantial evidence standard. (*People v. Hatch* (2000) 22 Cal.4th 260, 272.) Under this standard, we must review " 'the whole record in the light most favorable to the judgment' and decide 'whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*Ibid.,* quoting *People v. Johnson* (1980) 26 Cal.3d 557, 578.) If the circumstances reasonably justify the verdict, we cannot reverse merely because a contrary finding might also be reasonably deduced from the circumstances. (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) We will reverse only if it "clearly appear[s] that upon no hypothesis whatever is there sufficient substantial evidence to support [the judgment]." (*Ibid.*)

Defendant contends that there is insufficient evidence that he committed robbery because he took the property from Haught's car and not her immediate presence. This contention lacks merit.

It is immaterial that Haught was not present when the property was initially taken because she was present when she tried to stop defendant from getting away with her property. (*Gomez, supra,* 43 Cal.4th at p. 264.) "A victim who tries to stop a thief from getting away with his property *is* in the presence of the property." (*Ibid.*, fn. omitted.) In *Gomez*, the court held that a robbery occurred even though the victim was not present when the defendant took money from the victim's restaurant. (*Id.* at p. 253.) The victim arrived on the scene, saw defendant leaving, and pursued him. (*Ibid.*) The defendant fired two shots as the victim followed him from 100 to 150 feet away. (*Ibid.*) The court concluded that the crime of robbery "occurs whether a perpetrator relies on force or fear to gain possession or to maintain possession against a victim who encounters him for the first time as he carries away the loot." (*Id.* at p. 265; see *Estes, supra,* 147 Cal.App.3d at pp. 27–28 [robbery committed when defendant uses force or fear to prevent victim from regaining the property and to facilitate his escape regardless of the means by which defendant originally acquired the property].) "The crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property." (*Gomez*, at p. 27.)

Defendant's argument that no robbery occurred because he dropped Haught's backpack and her wallet when he was confronted by her also fails. " '[I]t is no defense that the property taken was restored, even though this occurs almost immediately.' " (*People v. Hill* (1998) 17 Cal.4th 800, 852, quoting 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 635, pp. 715–716.) Moreover, here, there was evidence that defendant retained other property belonging to Haught as he fled. And, the jury could very well have inferred that defendant intended to take the wallet when he pushed Haught to the ground and turned to run, not realizing the wallet then fell to the ground. Hence, his argument that his use of force was simply to get away and not to

4

further the robbery is without merit.  Because defendant used force between caption and asportation, he was guilty of robbery.  (*Gomez, supra,* 43 Cal.4th at p. 258.)

### 2.  *Jury instructions*

Defendant contends the jury instructions on robbery were duplicative and points out a few errors in either the reading or transcription of the instructions.  The Attorney General argues that defendant has forfeited the issue because he did not object below.  "Where, however, a defendant asserts that an instruction is incorrect in law an objection is not required."  (*People v. Capistrano* (2014) 59 Cal.4th 830, 875, fn. 11.)

"We determine whether a jury instruction correctly states the law under the independent or de novo standard of review.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.'  [Citations.]  ' "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given . . . ." '  [Citation.]  'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.'  [Citation.]"  (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 (*Ramos*).)

The court gave two special instructions on robbery.  The first was a special instruction defining immediate presence:  "Quote, immediate presence, unquote, as defined within CALCRIM Number 1600 robbery, a violation of Penal Code Section 211.  A thing is in the immediate presence of a person in respect to robbery which is solely with [*sic*] his or her reach, inspection, observation, or control that he could not overcome by violence or prevented by fear retain his or her possession to it.  [¶] Thus, quote, immediate presence, unquote, is an area over which the victim at the time force or fear was employed could be said to exercise some physical control over his or her property.  The crime of robbery is a continuing offense that begins at the time of the original taking until the robber reaches a place of relative safety.  [¶] It is sufficient to support a conviction that the defendant used information to prevent the victim re-taking the

5

property and to facilitate his escape." The second special instruction defined temporary place of safety: "Quote, temporary place of safety, unquote, as defined within CALCRIM Number 3261 in the commission of felony, defined escape rule, the People must prove that the defendant used force or fear to take the property during the commission of the robbery charged in Count I. The crime of robbery continues until the perpetrator has actually reached a temporary place of safety. [¶] The defendant has reached a temporary place of safety if defendant actually reached the place of temporary safety and he has successfully escaped from the scene, and he is no longer being chased, and he has unchallenged possession of the property."

Defendant argues that the court's phrase in the last sentence of the first instruction was "nonsensical." The court appears to have misread the instruction and stated, "It is sufficient to support a conviction that the defendant used *information* to prevent the victim" instead of "the defendant used force to prevent the victim from retaking the property . . . ." The jury had the court's correct written instructions before it as well as CALCRIM No. 1600, the standard instruction on robbery. We must consider the instructions as a whole and presume that the jury understood and correctly correlated all the jury instructions given. (*Ramos, supra,* 163 Cal.App.4th at p. 1088.)

Defendant next asserts that the court erred in adding the term, "some" in its definition of immediate presence, so that the instruction read: " '[I]mmediate presence' is an area over which the victim, at the time force or fear was employed, could be said to exercise *some* physical control over his or her property." We fail to discern how the court's use of the phrase "some physical control" had any effect on the jury's determination of the facts in this case. The evidence showed that defendant prevented Haught from regaining control over her property. " '[A] robbery occurs when defendant uses force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence regardless of the means by which defendant originally acquired the property.' " (*Gomez, supra*, 43 Cal.4th at p. 259.)

Defendant further argues that the last sentence of the first special instruction was an incorrect statement of the law. That sentence read, "It is sufficient to support a

6

conviction that defendant used force to prevent the victim from retaking the property *and* *t*o facilitate his escape."  Defendant contends the conjunctive "and" (which we have italicized) is problematic because it precludes a jury finding that he pushed Haught not to "complete the asportation of the property" but merely to "get away" because he was trapped by Haught.  As defendant acknowledges, however, force used to take property or during asportation is sufficient to support a robbery conviction.  (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165, fn. 8; *Gomez, supra,* 43 Cal.4th at p. 258.)  The instruction was a correct statement of the law.

Finally, defendant argues that the last sentence of the second special instruction adds requirements that are not supported by the law.  We disagree.  The court's instruction simply explains circumstances under which a defendant would have reached a temporary place of safety—e.g., successful escape from the scene, no longer being pursued, and unchallenged possession of the property.  (See *Cooper*, *supra*, 53 Cal.3d at p. 1170; *People v. Salas* (1972) 7 Cal.3d 812, 823.)  The question of whether the evidence supported these circumstances was for the jury.

### III.  DISPOSITION

The judgment is affirmed.

7

_____
Rivera, J.

We concur:


_____
Ruvolo, P.J.


_____
Streeter, J.