Filed 7/17/23  P. v. Armstrong CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080132 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD287517) |
| CHRISTIAN ANTHONY ARMSTRONG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Christian Anthony Armstrong took a drink from a convenience store cooler, intending to steal it.  When a store employee blocked his exit,

Armstrong dropped the can and assaulted another employee. A jury convicted him of second-degree robbery (Pen. Code, § 211)[1] and assault by force likely to produce great bodily injury (§ 245, subd. (a)(4)). On appeal from the judgment, Armstrong contends insufficient evidence supports the robbery conviction because he abandoned the property before attacking the employee. As we shall explain, we disagree and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 29, 2020, around 10 p.m., three employees, Gwyneth G., Anna M., and Miguel O., were at the end of their shift at a convenience store. Another employee from the prior shift, J. Mark M., was still at the store to spend time with his girlfriend, Anna. Gwyneth worked at the cash register, while Miguel, Anna, and J. Mark took a break outside the store. The store's double doors were steadied that night, meaning customers could only use the left door because the right door was locked.

Armstrong arrived at the store and started a conversation with the three employees outside. He asked Miguel for either a drink, or cigarettes and money. Miguel was annoyed by the request and did not give Armstrong anything. Armstrong testified at trial that he then entered the store carrying a glass mug and intending to steal a drink. As he entered the store, one of the employees asked Armstrong to put on a facemask, but he refused.

Armstrong then walked to the back of the store where the drink coolers were located. The employees who had been outside followed Armstrong inside because, according to Anna, "he looked like he was up to no good." Anna, Miguel, and J. Mark stood by the exit. Anna testified that she stood by

---

[1]    All further undesignated statutory references are to the Penal Code.

the door because she could tell Armstrong was trying to steal something. She intended to ask him to hand over whatever he stole and leave.

Armstrong grabbed an energy drink from the cooler and quickly walked toward the door. As he approached the door, he threw his glass mug, which shattered on the floor, and tried to run out the door with the drink without paying. However, Anna blocked the open left door.[2] When Armstrong realized the right door was locked, he turned around, and in one motion threw down the energy drink and punched at Miguel.

Armstrong's swing glanced Miguel's head, and Miguel fell back into a display. Miguel stood up and stepped toward Armstrong, and Armstrong tackled him into a wall. The two fell to the ground, and Anna got on top of Armstrong to stop the attack. Armstrong continued to struggle, wrestling with Anna and Miguel. Gwyneth called the police, and J. Mark handed a stun gun to Anna. Anna used the stun gun multiple times on Armstrong, who continued to resist her and Miguel. The police arrived a few minutes later and took Armstrong into custody.

The People charged Armstrong with second-degree robbery (§ 211) and assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)). The charging document also alleged Armstrong suffered a prior conviction, which constituted a serious prior felony (§§ 667, subd. (a)(1); 668; 1192.7, subd. (c)), and a prior strike (§§ 667, subds. (b)–(i); 668; 1170.12). The People further alleged that Armstrong committed the offenses while on bail (§ 12022.1, subd. (b)).

---

[2]     There was conflicting testimony as to whether Gwyneth locked both doors before Armstrong tried to leave.

At trial, the prosecution introduced the testimony of Gwyneth and Anna, and one of the responding police officers. The prosecution also showed two surveillance videos depicting the incident from different angles.

Armstrong took the stand in his own defense. He testified that he went into the store to get a drink and, in response to his counsel's question about whether he was going to pay for the drink, stated, "No, I was not." His counsel then asked, "So you were going to commit petty theft?" to which Armstrong responded, "Yeah, I was." In response to his counsel's question as to why he fought Miguel, Armstrong stated, "I felt like I was trapped inside the store and I needed to get out before I got hurt." Armstrong denied that he was trying to use force to steal or regain control of the energy drink.

Before the parties presented their closing arguments, the jury was instructed on robbery and the lesser included offense of attempted robbery. During her closing statement, Armstrong's counsel argued that Armstrong only used force after abandoning the drink and, therefore, he could not be convicted of robbery.

Thereafter, the jury returned its verdict finding Armstrong guilty of both charged offenses. The court struck the prior strike and prior serious felony allegations, and also struck the on-bail enhancement allegation. The court sentenced Armstrong to the upper term of five years for the robbery conviction and a concurrent two-year term for the assault conviction. The court suspended execution of the five-year prison sentence and placed Armstrong on two years of formal probation.

DISCUSSION

Armstrong's sole contention on appeal is that the robbery conviction must be reversed because the evidence shows he abandoned the energy drink before he used force. The People respond that the jury's verdict is supported

4

by sufficient evidence because Armstrong used force against the employees as they attempted to stop him from leaving the store with the stolen property. The People contend that because Armstrong had not reached "a place of safety" before using force, the robbery conviction must be affirmed.

A

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Property is within a person's immediate presence if it is " ' "so within his [physical control] that he could, if not overcome by violence or prevented by fear, retain his possession of it." ' " (*People v. Hayes* (1990) 52 Cal.3d 577, 626–627.) To find a defendant guilty of robbery, the People must show the "defendant use[d] force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence ...." (*People v. Estes* (1983) 147 Cal.App.3d 23, 27 (*Estes*).) The People must also prove that " 'the specific intent [to permanently] deprive [the victim] of [the] property' " motivated the defendant's use of force or fear. (*People v. Clark* (2011) 52 Cal.4th 856, 943.)

Robbery includes two phases: "caption," achieving possession of the property; and "asportation," carrying the property away. (*People v. Gomez* (2008) 43 Cal.4th 249, 255 (*Gomez*).) This means that "[a] robbery is not completed at the moment the robber obtains possession of the stolen property. The [robber's] ... asportation, [or] escape with the loot[, is] considered as important in the commission of the crime as gaining possession of the property." (*Estes, supra*, 147 Cal.App.3d at p. 27.) The crime remains in progress "from the time of the original taking until the robber reaches a place of relative safety." (*Id.* at p. 28.) The use of force or fear can occur

5

either during the caption or asportation in order to support a robbery conviction. (*Gomez*, at p. 257.) However, "[t]he robber's escape with the loot is not necessary to commit the crime." (*People v. Pham* (1993) 15 Cal.App.4th 61, 65 (*Pham*).) Thus, even if the perpetrator does not ultimately retain possession of the stolen property, any force used after the taking of the property and before the robber reaches a place of relative safety supports a robbery conviction. (*Id.* at p. 66.)

To determine if sufficient evidence supports the jury's verdict, we first " ' "review the entire record in the light most favorable to the judgment ...." ' " (*People v. Ware* (2022) 14 Cal.5th 151, 167.) We "determine whether the record contains ' "evidence that is reasonable, credible, and of solid value" ' such that a reasonable jury could have found the defendant guilty beyond a reasonable doubt." (*Ibid.*, quoting *People v. Renteria* (2022) 13 Cal.5th 951, 970.) "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*).)

B

Armstrong argues he used force only after abandoning the energy drink. He contends, therefore, that the evidence does not establish two required elements of robbery: (1) that he used force or fear to take the property or to prevent the owner from resisting the taking; and (2) that when he used force or fear, he intended to deprive the owner of the property

6

permanently. However, the record contains credible evidence from which a reasonable trier of fact could find these two elements satisfied.

First, substantial evidence supports the jury's conclusion that Armstrong used force or fear to prevent the employees from resisting his taking of the drink. "A robbery [is] committed if the stolen item 'is so within [the victim's] reach, inspection, observation, or control, that [the victim] could, if not overcome by violence or prevented by fear retain his possession of it.' " (*Pham, supra,* 15 Cal.App.4th at p. 67, quoting *People v. Webster* (1991) 54 Cal.3d 411, 440.) Anna testified that as Armstrong tried to flee with the drink, she blocked him from leaving the store and planned to ask him to return the stolen property. The surveillance video shows that Anna never had the chance to regain possession of the drink because Armstrong escalated the situation instantaneously, punching and tackling Miguel. Anna testified, and the video shows, she then immediately jumped on top of Armstrong. Armstrong's struggle with the employees prevented them from immediately regaining possession of the drink. (*Id.* at p. 65.) The jury reasonably inferred from this evidence that Armstrong used force in furtherance of the robbery.

Armstrong relies on *People v. Etheridge* (2015) 241 Cal.App.4th 800, 803–805 (*Etheridge*) to support his argument that he abandoned the drink before using force. In *Etheridge*, the defendant snuck a steak underneath a grocery store's loading door and picked it up outside the store. (*Id.* at p. 803.) When the store's security guards confronted him, he threw the steak onto the roof of a nearby building and ran. (*Id.* at pp. 803–804.) When one of the guards overtook the defendant, he hit the guard with a rock. (*Id.* at p. 804.) The court found insufficient evidence supported the robbery conviction because the defendant "used force only *after* he abandoned the steak. Thus,

7

he did not 'rel[y] on force or fear to gain possession or to maintain possession.' " (*Ibid.*, quoting *Gomez, supra*, 43 Cal.4th at p. 265.)

Armstrong argues his case is no different than *Etheridge* because he used force only after dropping the drink. (*Etheridge, supra*, 241 Cal.App.4th at p. 804.) However, the surveillance video shows Armstrong dropped the can only as he swung to punch Miguel. Unlike the defendant in *Etheridge*, Armstrong did not throw the property and then flee the scene before attacking store personnel. (*Id.* at pp. 803–804.) Rather, he attempted to open the door with the drink, then dropped the can within his vicinity and immediately attacked the store employee. Armstrong's assaultive behavior was sufficiently contemporaneous with the taking of the can to create a reasonable inference that he intended to keep the drink, given that robbery is "a continuing offense ... from the time of the original taking until the robber reaches a place of relative safety." (*Estes, supra*, 147 Cal.App.3d at p. 28.)

These facts supported the jury's findings that Armstrong did not abandon the stolen property and that he intended to take the drink. (See *Pham, supra*, 15 Cal.App.4th at pp. 64, 66–67 [Though the defendant dropped the stolen property right before using force against the owner, the court found substantial evidence supported the defendant's robbery conviction.].) The jury was free to reject Armstrong's contrary testimony. (See *People v. Silva* (2001) 25 Cal.4th 345, 369 [A rational trier of fact may disbelieve the portions of a defendant's statements that are self-serving.].) It is not our role to reevaluate its findings. (*Albillar, supra*, 51 Cal.4th at p. 60.)

8

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.

9