Filed 12/1/23  P. v. Partida CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B318164 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA097792) |
| v. | |
| BRYAN PARTIDA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Affirmed as modified.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne and Susan S. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury convicted defendant Bryan Partida of first degree murder and first degree robbery and found certain sentencing allegations to be true.  On appeal from his conviction, defendant contends that: the trial court prejudicially erred by failing, sua sponte, to instruct the jury on theft as a lesser included offense of robbery; and counsel rendered ineffective assistance in failing to request such an instruction.  We will modify the abstract of judgment to correct a clerical error regarding custody credits.  As so modified, we affirm.

# II.  BACKGROUND

## A.    *Procedural History*

The Los Angeles County District Attorney filed an information charging defendant with the following:  murder with robbery-murder and burglary-murder special circumstances allegations (Pen. Code[1], §§ 187, subd. (a), 190.2, subd. (a)(17)); first degree burglary of an inhabited dwelling house (§ 459); and first degree robbery in an inhabited dwelling house (§§ 211, 212.5, subd (a)).  The information also alleged that defendant personally used a deadly and dangerous weapon in connection with all three crimes.  (§ 12022, subd. (b)(1).)

The jury found defendant guilty of murder and first degree robbery and found that the murder was in the first degree because it was willful, deliberate, and premeditated and under a felony murder theory.  It also found the deadly and dangerous

---

[1]     Further statutory references are to the Penal Code.

2

weapon allegations and the robbery-murder special circumstance allegations to be true. It could not, however, reach a verdict on the burglary count or the burglary-murder special circumstance allegation. The court therefore declared a mistrial as to the count and allegation and, on the prosecution's motion, dismissed them.

The trial court sentenced defendant for the murder count to life imprisonment without the possibility of parole, plus one year for the deadly and dangerous weapon enhancement. For the robbery count, the court sentenced defendant to the upper term of six years, which was stayed pursuant to section 654.

B.    *Trial*[2]

1.    Prosecution's Case

The victim Jeffrey Vezich lived in a two-bedroom condominium in Playa Del Rey. Vezich's condominium had three surveillance cameras installed: one in the living room, one facing the hallway entrance, and one in the spare bedroom. A fourth camera faced the exterior patio.

On April 3, 2018, a police officer discovered Vezich's body inside the condominium. The coroner concluded that Vezich died from blunt force trauma to the head.

At trial, the prosecution played a video taken from the surveillance cameras in Vezich's condominium. The video, dated March 25, 2018, depicted the following: At around 3:00 p.m., defendant entered Vezich's home. At 3:01 p.m., defendant put a

---

[2]    Because defendant does not dispute his conviction for first degree murder, we will only recite the portions of the record relevant to this appeal, except as necessary for context.

small pill on a speaker and Vezich handed him a hammer. Defendant used the hammer to crush the pill and then switched to using a smaller item to cut the pill.

At 3:15 p.m., Vezich handed defendant a drinking glass and a bottle of beer. At 3:20 p.m., defendant ingested the crushed pill.

At around 3:38 p.m., Vezich went towards his office area, and defendant took the hammer off the speaker and placed it on a nearby crate. Defendant then paced back and forth and moved the hammer to the kitchen counter. Vezich walked into his bedroom and when he came out, he held a bag that he began to look through. At 3:50 p.m., defendant grabbed the hammer and used it to strike Vezich at least 75 times.

At 3:51 p.m., defendant, while still holding the hammer in his right hand, took a camera from the office area and placed the strap around his neck. Defendant then struck Vezich in the head with a dumbbell four times. The video ended at 3:55 p.m.

A search of defendant's cell phone records demonstrated that defendant had attempted to sell Vezich's items on the internet. Defendant's cell phone also contained photographs of Vezich's items, dated March 25, 2018, the date of the murder.

### 2. Defense Case

Defendant testified in his own defense. On March 24, 2018, defendant met Vezich at Vezich's home and sold him cocaine and Xanax. The following day, Vezich contacted defendant and asked him for more drugs. Defendant arrived at Vezich's home and began using cocaine and Xanax with him. Defendant had not previously ingested the combination of Xanax and cocaine.

4

Vezich refused to pay defendant for the drugs at which point defendant became paranoid and anxious. Defendant believed his only escape was to kill Vezich. After his initial assault with the hammer, defendant used a dumbbell to strike Vezich four more times "[t]o make sure he was dead."

Defendant did not decide to take Vezich's property until after Vezich was dead.

## III.  DISCUSSION

### A.    *Lesser Included Offense Instruction*

Defendant contends that the trial court prejudicially erred when it failed to instruct the jury that theft was a lesser included offense of robbery.[3]  According to defendant, there was

---

[3]     While the court instructed the jury on the elements of theft, it did so only in the context of explaining the elements of burglary. Specifically, the court instructed: "The defendant is charged in Count 2 with burglary in violation of . . . section 459. [¶]  To prove that the defendant is guilty of this crime, the People must prove that: [¶]  1.  The defendant entered a structure; [¶] AND [¶]  2.  When he entered the structure, he intended to commit theft. [¶]  To decide whether the defendant intended to commit theft, please refer to the separate instructions that I will give you on that crime—see CALCRIM 1800. [¶]  A burglary was committed if the defendant entered with the intent to commit theft. The defendant does not need to have actually committed theft as long as he entered with the intent to do so. The People do not have to prove that the defendant actually committed theft." (CALCRIM No. 1700.)

"To prove the crime of larceny by theft, the People must prove that: [¶]  1.  The defendant took possession of property

---

5

substantial evidence that he did not form the intent to steal Vezich's property until after Vezich's death and, thus, a reasonable probability that a properly instructed jury would have convicted him of theft, not robbery. Defendant therefore seeks to vacate his conviction for robbery and the robbery-murder special circumstances allegation.

"'A criminal defendant has a constitutional right to have his or her jury determine "every material issue presented by the evidence" and this includes the right, where appropriate, to have the jury instructed on lesser included offenses.' (*People v. Abilez* (2007) 41 Cal.4th 472, 513 (*Abilez*).) 'Theft is a lesser included offense of robbery.' (*Id.* at p. 514.) Accordingly, even in the absence of a request, the trial court has a sua sponte duty to instruct on theft as a lesser included offense of robbery if the evidence has raised 'a question as to whether all of the elements of robbery were present and if there was evidence that would have justified a conviction of the lesser offense.' (*Ibid.*)" (*People v. Friend* (2009) 47 Cal.4th 1, 51.) "We review de novo a trial court's failure to instruct on a lesser included offense [citation], and in doing so we view the evidence in the light most favorable to the defendant." (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137 (*Millbrook*).)

Robbery is the felonious taking of personal property in the possession of another from his or her person or immediate

---

owned by someone else; [¶] 2. The defendant took the property without the owner's consent; [¶] 3. When the defendant took the property he intended to deprive the owner of it permanently; [¶] AND [¶] 4. The defendant moved the property, even a small distance, and kept it for any period of time, however brief. [¶] For theft, the property taken can be of any value, no matter how slight." (CALCRIM No. 1800.)

presence, and against his or her will, accomplished by means of force or fear. (§ 211.) "'[I]t is settled that a victim of robbery may be unconscious or even dead when the property is taken, so long as the defendant used force against the victim to take the property.'" (*Abilez, supra*, 41 Cal.4th at p. 507.) Theft is the criminal taking of property without force or fear. (*People v. Gomez* (2008) 43 Cal.4th 249, 254; see § 484, subd. (a).) Thus, if the victim is already dead when the intent to steal is formed, there can be no use of force on the victim, and no robbery. (See *People v. Huggins* (2006) 38 Cal.4th 175, 216 ["'[i]f [the] intent to steal arose after the victim was assaulted, the robbery element of stealing by force or fear is absent' [citation], and the offense is theft [citation]"]; *People v. Navarette* (2003) 30 Cal.4th 458, 499 ["one cannot rob a person who is already dead" but "one can certainly rob a living person by killing that person and then taking his or her property"].)

We agree with defendant that on this record, the trial court erred when it failed to instruct the jury that theft was a lesser included offense of robbery.[4] (*People v. Turner* (1990) 50 Cal.3d

---

[4]     Because the trial court had a sua sponte duty to instruct on theft, we need not address defendant's argument that his counsel provided ineffective assistance by failing to request the instruction. (*Millbrook, supra*, 222 Cal.App.4th at p. 1136, fn. 7.) Even if we were to consider the merits of defendant's argument, we would reject it because, as we will explain below, it is not reasonably probable that defendant was prejudiced by any deficient performance by counsel. (See *People v. Thompson* (2022) 83 Cal.App.5th 69, 90 ["Regarding prejudice, a 'defendant must show that there is a reasonable probability'—meaning 'a probability sufficient to undermine confidence in the outcome'—

668, 690 (*Turner*).) Such an error, however, "is harmless if defendant[] cannot demonstrate a reasonable probability that the jury would have—without the error—reached a different result." (*People v. Gonzalez* (2018) 5 Cal.5th 186, 191 (*Gonzalez*).) "The prejudice arising from the failure to give such instructions is the risk that the jury ignored its instructions and convicted the defendant of an offense . . . for which the prosecution did not carry its burden. The jury might have been convinced that the defendant was guilty of some lesser included offense and, as a result, tempted to convict of a greater offense rather than acquit." (*Id.* at p. 200.) Accordingly, we consider whether defendant was prejudiced by the court's error.

Our Supreme Court's opinion in *Turner, supra*, 50 Cal.3d 668 is instructive. In *Turner*, the defendant sought to reverse a first degree murder conviction (under a felony murder theory), a robbery conviction, and a true finding on a robbery-murder special circumstance allegation, on the grounds that the trial court prejudicially erred by failing to instruct on the lesser included offense of theft. (*Id.* at p. 690.) The defendant argued there was sufficient evidence that he had formed the intent to steal after killing the victim. (*Ibid.*)

Our Supreme Court agreed that the trial court erred. (*Turner, supra*, 50 Cal.3d at p. 690.) It found, however, that defendant was not prejudiced by the error because "the jury *was* given special instructions [highlighting] the issue of 'after-formed intent.' After reciting the elements of robbery, including the element that the 'taking be accomplished' by force or fear, the court admonished: 'An act of force *accompanied by a theft* does

_____

'that, but for counsel's unprofessional errors, the result of the proceeding would have been different'"].)

8

*not* constitute robbery unless the act of force was *motivated by an intent to steal.* If the intent to steal does not arise until *after* force has been used against the victim, *no robbery has taken place.* [¶] If an individual kills for reasons unrelated to theft, for example, because of anger, fear, or revenge, and then decides to take advantage of the situation by stealing some object from the person of the decedent, *the taking will constitute at most a theft* and not a robbery.' (Italics added.) Thus, the jury was told explicitly that it could not find a robbery if it accepted defendant's claim of 'after-formed intent.'

"Next, the felony-murder instructions advised that the killing must have occurred '*as a result* of the commission of or attempt to commit the crime of robbery, and where there was in the mind of the perpetrator the *specific intent* to commit such crime . . . . The specific intent to commit robbery and the commission or attempt to commit such crime must be proved beyond a reasonable doubt.' (Italics added.)

"Finally, in defining the special circumstance of robbery-murder, the court told the jury it must find, among other things, 'that the murder was committed *in order to carry out or advance the commission of the crime of robbery* or to *facilitate the escape therefrom* or to *avoid detection.* [¶] In other words, the special circumstance . . . is *not* established if the attempted robbery was *merely incidental* to the commission of the murder.' (Italics added.)" (*Id.* at p. 691.)

Our Supreme Court concluded: "These instructions made clear beyond doubt that defendant was not guilty of robbery, first degree felony murder, or the sole special circumstance charged, if his intent to steal arose only after the fatal assault. In finding for the prosecution on all robbery issues, the jury thus necessarily

9

concluded that he decided to steal before assaulting [the victim]." (*Turner, supra*, 50 Cal.3d at p. 691.)

Here, the trial court instructed the jury that it needed to resolve the question of *when* defendant formed the intent to steal in deciding whether defendant was guilty of robbery, first degree murder under a felony murder theory, and the robbery-murder special circumstance allegation. Regarding the robbery count, the court instructed the jury that "[t]he defendant's intent to take the property must have been formed before or during the time he used force or fear. *If the defendant did not form this required intent until after using the force or fear, then he did not commit robbery*." (Italics added; CALCRIM No. 1600.) And, as to the robbery-murder special circumstance allegation, the court instructed the jury that "[t]he defendant must have intended to commit the felon[y] of . . . robbery *before or at the time of the act causing death*." (Italics added; CALCRIM No. 730.) Finally, the court instructed the jury that in order for defendant to be guilty of first degree murder under a felony murder theory, "[t]he defendant must have intended to commit the felon[y] of . . . robbery *before or at the time that he caused the death*." (Italics added; CALCRIM No. 540A.)

Based on the instructions that the trial court did deliver, the jury could not have convicted defendant of robbery, first degree murder under a felony murder theory, and the robbery-murder special circumstance, unless it concluded that defendant formed the intent to steal before or while he killed Vezich.[5] (See

---

[5] Indeed, that the jury was unable to reach a verdict on the burglary count and the burglary-murder special circumstance allegation demonstrates that the jury was cognizant of the importance of the timing of defendant's intent to steal. The court

10

*Turner, supra*, 50 Cal.3d at p. 691; see also *People v. Chhoun* (2021) 11 Cal.5th 1, 30 [jury presumed to follow instructions]; *Gonzalez, supra*, 5 Cal.5th at p. 191 ["[a] jury's other findings . . . may render the error harmless by resolving factual issues . . . against the defendant"].)  Accordingly, the court's error in failing to instruct the jury on theft as a lesser included offense of robbery was harmless.

B.    *Abstract of Judgment*

        At sentencing, the trial court awarded defendant 1,385 days of actual time custody credits.  (See §§ 2900.5 [actual time credit], 2933.2 [person convicted of murder does not accrue any worktime credit].)  The abstract of judgment, however, does not include any custody credits.  We therefore will order the abstract of judgment modified to correct this clerical error.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

---

instructed the jury that for burglary, the prosecution must prove, among other things, that "[w]hen [defendant] entered the structure, he intended to commit theft."  (CALCRIM No. 1700.) Thus, while some jurors must have concluded that defendant did not intend to steal when he first entered Vezich's home, all jurors necessarily found that he later formed such an intent before or during the murder.

## IV.  DISPOSITION

The matter is remanded with directions for the trial court to modify the abstract of judgment to reflect that defendant received 1,385 days of actual custody credit.  The clerk of the superior court is directed to send an amended abstract of judgment reflecting this modification to the Department of Corrections and Rehabilitation.  As so modified, the judgment of conviction is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.

12