Filed 12/13/24  P. v. Matthews CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH DELANE MATTHEWS et al.,<br><br>        Defendants and Appellants. | B327165<br><br> (Los Angeles County Superior Ct. No. BA482072)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on November 20, 2024, be modified as follows:

1.     On page 4, first paragraph and second sentence beginning "Matthews followed behind the Rolls Royce and McGregor" delete the word "was" and replace it with "and others began traveling" so the full sentence reads:

Matthews followed behind the Rolls Royce and McGregor and others began travelling behind Matthews as they left.

2.     On page 4, second paragraph, in the third sentence beginning "McGregor and Agboola," delete "McGregor and."

3.     On page 4, second paragraph, in the fifth sentence beginning "McGregor took a cross," following the first word, "McGregor" add "who had taken over the driving, turned the car around before joining the others near the Rolls Royce where he," so the full sentence reads:

McGregor, who had taken over the driving, turned the car around before joining the others near the Rolls Royce where he took a cross necklace from De La Rosa's neck before leaving the scene.

4.     On page 14, the fourth full paragraph beginning "Fourth, McGregor had," delete the entire paragraph.

5.     On page 14, the original fifth paragraph beginning "Fifth, after McGregor heard," delete the word "Fifth" and replace it with "Fourth," so the entire sentence reads:

Fourth, after McGregor heard gunshots he repositioned the SUV near the scene, approached the scene, and actively participated in the robbery by taking De La Rosa's cross necklace.

There is no change in judgment.

Appellant McGregor's petition for rehearing is denied.

_____

LUI, P. J.         ASHMANN-GERST, J.        CHAVEZ, J.

Filed 11/20/24  P. v. Matthews CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JOSEPH DELANE MATTHEWS et al.,<br><br>      Defendants and Appellants. | B327165<br><br>(Los Angeles County Superior Ct. No. BA482072) |

APPEAL from judgments of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge. Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant Joseph Delane Matthews.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant Ikouree McGregor.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Idan Ivri and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Joseph Delane Matthews and Ikouree McGregor appeal as follows from their convictions for various offenses related to actions in September and October 2019.  Matthews challenges the sufficiency of the evidence in his convictions for conspiracy to commit robbery (count 1), robbery (counts 11 and 12) and attempted robbery (count 13). McGregor initially challenged only his conviction for felony murder (count 10), claiming not to have been a major participant who acted with reckless indifference to human life. In a later letter McGregor joined Matthews in his position that insufficient evidence supported the verdict in count 13 (robbery) as we address below.

We conclude substantial evidence supports each of the challenged convictions and affirm.

## FACTS AND PROCEDURAL BACKGROUND

In September and October 2019, Matthews and McGregor, along with codefendants Michael Agboola and Allen Asenuga (in the September incident), engaged in a series of actions involving following and robbing individuals who had purchased marijuana from illegal pop-up marijuana dispensaries in Los Angeles.[1]

---

[1]     The four men were tried jointly before separate juries. We refer to them collectively as codefendants. Neither Agboola nor Asenuga are parties to this appeal.

**September 21, 2019 incident**

On September 21, 2019, Matthews, McGregor and Asenuga flew from Texas to Los Angeles and met with codefendant Agboola, who was also from Texas, but had arrived earlier. The men gathered together at a hotel near Los Angeles International Airport. Thereafter McGregor, Agboola and Asenuga drove to a storage facility where they obtained a small safe.

That evening McGregor, Agboola and Asenuga were directed by Matthews to a South Main Street pop-up marijuana shop in downtown Los Angeles (known as Cali Plug). They arrived in a BMW SUV and were soon joined by Matthews in his own vehicle. After talking with each other for a few minutes, Matthews entered the dispensary, and the BMW with the other three men left the parking lot. At approximately 8:00 p.m., Matthews sent text messages to McGregor describing potential robbery targets to which McGregor responded, "Pick who look good." Matthews described one as a "white boy with green shirt and black beanie and cookie backpack tan Gucci flip flops." Matthews then sent McGregor a picture of the individual and noted he was leaving the pop-up. McGregor and Matthews continued messaging each other about the location of the proposed target but lost him as he drove out of the parking lot.

At approximately 9:00 p.m., Nathaniel Davis and Jean Carlos De La Rosa arrived at Cali Plug in a rented Rolls Royce, where they purchased a large quantity of marijuana products, spending over $6,000. At 9:49 p.m., as Davis and De La Rosa left the dispensary carrying their purchases, Matthews walked out behind them to his car. Davis and De La Rosa put their purchases in the trunk of the Rolls Royce and began their drive to Tarzana.

Meanwhile Matthews had returned to his car in the parking lot and soon commenced a lengthy phone call with McGregor in the nearby BMW SUV. Matthews followed behind the Rolls Royce and McGregor was behind Matthews as they left. While traveling to Tarzana, McGregor followed the Rolls Royce and sent location pins to Matthews to show the path they were traveling.

They all reached the Tarzana home at approximately 10:30 p.m. There, Asenuga approached Davis and De La Rosa with a firearm, demanding their valuables and marijuana. McGregor and Agboola then approached and directed Davis and De La Rosa to open the trunk where the marijuana had been stored. After having difficulty opening the trunk, Asenuga shot three times, hitting De La Rosa once in the torso leading to his death. McGregor took a cross necklace from De La Rosa's neck before leaving the scene.

After the robbery Davis attempted to help De La Rosa and noted De La Rosa's cross necklace was missing. Video showed McGregor wearing what appeared to be this necklace when the defendants later met at their hotel.

Following the robbery and murder, McGregor, Agboola, and Asenuga returned to their hotel, where video showed them entering with boxes consistent with those taken from the victims. Matthews arrived at the hotel approximately 40 minutes later and was later observed leaving with McGregor, carrying a similar box.

**October 20, 2019 incident**

On October 19, 2019, police observed Matthews and McGregor and two other men conducting surveillance of another illegal pop-up marijuana dispensary in Los Angeles. The next

4

evening, October 20, Matthews and McGregor returned to the location in a van with the other two men.

When a white pickup truck loaded with marijuana products left the dispensary, after closing, Matthews, McGregor and the two other men in their van followed the pickup truck for approximately 20 miles as they drove to Santa Clarita. Police, in an effort to avert a possible robbery, pulled the truck off the freeway. The van carrying appellants and the two other men followed the truck and police to a parking lot. Once parked, the van was surrounded by police and the occupants were detained. A search of the van revealed masks, zip ties, a replica firearm, and approximately four pounds of marijuana.

**Arrest and McGregor's statements to police**

Matthews and McGregor were both arrested. In statements to police that were later provided to McGregor's jury, McGregor admitted he provided a safe for storing and transporting guns, adding Agboola and Asenuga needed the safe because "they were picking up their firearms." McGregor described the guns used by Agboola and Asenuga as two semiautomatic handguns.

McGregor told police Agboola had been robbed of about $25,000-$30,000 just days before the September 21 incident. He described Agboola and Asenuga as being "on rantics" about the group who robbed Agboola.[2] He added they "wanted to retaliate."

**Trial and convictions**

Matthews was charged with conspiracy to commit robbery (Pen. Code, § 182, subd. (a)(1)), sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)(3)(D)) on

[2]    We assume "rantics" is a combination of "rant" and "frantic" and describes angry words delivered in a hurried, excited and disorganized way.

October 20, 2019, and two counts of second degree robbery (Pen. Code, § 211), and an attempted second degree robbery (Pen. Code, §§ 211, 664)[3] on September 21, 2019.

McGregor was charged with the same offenses as Matthews, as well as first degree murder (§ 187, subd. (a)) of De La Rosa on September 21, 2019.

Following a jury trial, Matthews was convicted of two counts of sale/transportation of marijuana (counts 2 and 8), conspiracy to commit robbery (count 1), two counts of second degree robbery (counts 11 and 12), and attempted second degree robbery (count 13). He was sentenced to nine years eight months in state prison.

McGregor was convicted of two counts of sale/transportation of marijuana (counts 2 & 8), conspiracy to commit robbery (count 1), two counts of second degree robbery (counts 11 & 12), attempted second degree robbery (count 13) and first degree murder (count 10). He was sentenced to 25 years to life plus four years eight months.

Both Matthews and McGregor filed timely notices of appeal.

## CONTENTIONS ON APPEAL

Matthews contends that insufficient evidence supports his convictions for conspiracy to commit robbery, second degree robbery, and attempted robbery. Specifically, he argues there was no proof of an agreement or specific intent to support the conspiracy conviction, that the evidence failed to establish he

---

[3] All further unattributed statutory references are to the Penal Code.

aided and abetted the robberies of Davis and De La Rosa, and that his actions regarding the unidentified man did not go beyond mere preparation and were not sufficient to constitute attempted robbery (count 13).

McGregor challenges his conviction of first degree felony murder, asserting the evidence was insufficient to establish he was a major participant who acted with reckless indifference to human life as required by law. He also joins Matthews in asserting insufficient evidence supports his conviction in the attempted robbery (count 13).

## DISCUSSION

### I. Standard of review

In reviewing a challenge of the sufficiency of the evidence "'[we] consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt.'" (*People v. Gaut* (2002) 95 Cal.App.4th 1425, 1430.) A court is not required to question whether it believes the evidence at trial established guilt beyond a reasonable doubt, instead, the question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Reversal is warranted only when there is insufficient substantial evidence to support a conviction. The standard of review is the same when the prosecution's case relies mainly on circumstantial evidence. (*People v. Stanley* (1995) 10 Cal.4th 764, 792.)

Thus if the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

## II.   Matthews's appeal

Matthews challenges the sufficiency of the evidence supporting his convictions for conspiracy to commit robbery, robbery, and attempted robbery.

### A.   *Conspiracy to commit robbery (count 1)*

To establish conspiracy, the prosecution must prove (1) an agreement between two or more persons, (2) with the specific intent to agree to commit an offense, (3) the specific intent to commit that offense, and (4) an overt act committed by one or more of the parties in furtherance of the conspiracy. (*People v. Morante* (1999) 20 Cal.4th 403, 416.) A conspiracy may be proved by circumstantial evidence and inferred from the conduct of the defendants. (*People v. Homick* (2012) 55 Cal.4th 816, 870.) The offense at issue is robbery, which section 211 defines as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

Here, the defendants' coordinated behavior over the two days in October 2019 provides sound circumstantial evidence of both an agreement and the specific intent to commit robbery. The agreement among the participants can be reasonably inferred from the actions of Matthews and his codefendants. Their conduct demonstrates a level of coordination and shared purpose that goes beyond mere coincidence:

1) On October 19, Matthews and McGregor jointly scouted the dispensary location, parking nearby for an extended

8

period without leaving their vehicle, thus demonstrating a shared plan to identify a potential target.

2) The next evening, the codefendants all came together to the same location. The coordinated return indicates a mutual understanding of a plan to carry out a previously agreed-upon crime.

3) The codefendants brought tools commonly associated with robbery, including masks and zip ties. The presence of these items in their shared vehicle evidences a common plan and purpose among the occupants.

4) The codefendants waited outside the dispensary for an extended period of time, a behavior consistent with a group lying in wait for a suitable target. This synchronized action further supports the inference of a prior agreement.

5) When the pickup truck left the dispensary, all the codefendants in the van participated in following the truck for over 20 miles. This prolonged, coordinated pursuit also indicates a shared intent and plan.

The specific intent to agree to commit robbery, as well as the further specific intent to commit that offense, can be inferred from these same actions. The selection of an illegal marijuana dispensary as a target, the possession of tools commonly associated with robbery, and the prolonged pursuit of the vehicle leaving that dispensary all point to a shared intent to commit robbery.

Multiple overt acts were proven, including the codefendants' coordinated arrival at the dispensary and following of the pickup truck. Matthews's active participation in these overt acts goes well beyond mere presence. The joint actions of

9

Matthews and his coconspirators, combined with the presence of robbery tools, provide substantial circumstantial evidence from which a rational jury properly could find the elements of conspiracy beyond a reasonable doubt.

## B. *Aiding and abetting robbery of Davis and De La Rosa (counts 11 & 12)*

Substantial evidence established the elements of robbery: (1) the defendants took property not their own; (2) the property was in the possession of another person; (3) the property was taken from the other person or his immediate presence; (4) the property was taken against that person's will; (5) the defendants used force or fear to take the property or to prevent the person from resisting; and (6) when each defendant used force or fear, he intended to deprive the owner of the property permanently or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property. (CALCRIM No. 1600; *People v. Gomez* (2008) 43 Cal.4th 249, 254–255.) Here, the marijuana and other items taken from Davis and De La Rosa's possession and immediate presence, against their will, by means of force and fear from the threatened use of firearms, clearly establishes a robbery of Davis and De La Rosa occurred.

To prove Matthews aided and abetted this robbery, the evidence must establish that Matthews (1) knew of the perpetrator's unlawful purpose; (2) intended to facilitate that purpose; and (3) by act or advice, aided, promoted, encouraged, or instigated the commission of the crime. (*People v. Beeman* (1984) 35 Cal.3d 547, 561.)

The evidence here shows Matthews was present at the Cali Plug marijuana dispensary observing potential targets when

10

Davis and De La Rosa made their purchases. Matthews sent text messages to McGregor identifying potential victims and later walked behind Davis and De La Rosa as they left the dispensary, presumably to identify them as the target. Matthews then engaged in a 40-minute call with McGregor while the latter followed the victims to their residence in a separate vehicle. In addition McGregor sent multiple location updates to Matthews. This evidence, taken together with Matthews's activities with his codefendants earlier that day as well as his actions in October, supports a reasonable inference that Matthews knowingly and intentionally aided the commission of the robberies by identifying the victims as targets and facilitating their pursuit.

While Matthews argues his mere presence and a phone call are insufficient to establish aiding and abetting, the totality of the circumstantial evidence supports a reasonable inference that Matthews knowingly and intentionally facilitated the robbery with the three other men. His actions of identifying targets, maintaining communication during the pursuit, and later meeting to divide proceeds provide substantial evidence from which a jury could find Matthews guilty of aiding and abetting the September 2019 robberies beyond a reasonable doubt.

### C. *Attempted robbery of John Doe (count 13)*

An attempt to commit a crime requires a specific intent to commit the crime and a direct but ineffectual act done toward its commission. (*People v. Toledo* (2001) 26 Cal.4th 221, 229.) The act must go beyond mere preparation and show that the perpetrator is putting the plan into action. (*Id.* at p. 230.)

Here, the evidence shows Matthews (1) identified a man with a distinctive backpack as a target, (2) sent a photo and description of the man to McGregor, and (3) alerted McGregor

11

when the man was leaving the dispensary. In response, McGregor and the others entered the parking lot in the BMW and tried to position themselves to observe the man's path to his car so they could follow him as he left the area. Nevertheless the target eluded them as he passed the BMW SUV and drove out of the parking lot.

Matthews argues that merely following a potential victim is insufficient to constitute an attempt, however again the totality of the circumstances here—including the identification of the target, coordinated positioning, and immediate albeit unsuccessful pursuit—goes beyond mere preparation. The clear evidence of intent and the steps taken to put the plan in motion are substantial evidence from which the jury properly found Matthews guilty of attempted robbery.

## III.    McGregor's appeal

McGregor challenges the sufficiency of the evidence supporting his convictions for first degree felony murder and attempted robbery.

### A.    *First degree felony murder of De La Rosa (count 10)*

McGregor contends there was insufficient evidence he was a major participant who acted with reckless indifference to human life as required for felony murder liability.

To sustain a felony murder conviction for one who was not the actual killer, the prosecution must prove beyond a reasonable doubt the defendant was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e)(3); *People v. Clark* (2016) 63 Cal.4th 522, 609–610 (*Clark*).) To determine whether a person is a major participant in a crime, we consider the person's role in planning the criminal

12

enterprise, his/her role in supplying or using lethal weapons, awareness of the dangers posed, presence at the scene, opportunity to restrain the crime or aid the victim, and actions after lethal force was used. (*People v. Banks* (2015) 61 Cal.4th 788, 803 (*Banks*).) Reckless indifference to human life requires subjective awareness that one's participation in the felony involved a grave risk of death. (*Clark, supra*, at pp. 616–617.)

**1.** *Major participant*

The evidence shows McGregor was a major participant in the robbery. First, he was actively involved in planning the robbery. He exchanged text messages with Matthews about potential targets and further demonstrated his important role in the selection of victims by texting Matthews to "[p]ick who look good." This indicates McGregor was participating in making decisions about who would become a victim. This level of involvement goes beyond that of a mere participant and shows he was integral to the planning process.

Second, it can be inferred McGregor supplied or at least facilitated the firearms used in the robbery. He admitted providing a safe for storing and transporting guns that Agboola and Asenuga needed because "they were picking up their firearms." McGregor kept the safe in a storage unit, and on the day of the crime he took Agboola and Asenuga to the unit and retrieved items including a safe. He described the guns used by Agboola and Asenuga as two semiautomatic handguns, implying a familiarity with the weapons. Taken together these facts support an inference McGregor played a significant role in providing access to the weapons used in the murder of De La Rosa. Further, his role in providing a safe to transport the guns

13

and his knowledge concerning the guns also demonstrates a level of involvement beyond mere participation.

As noted in *Banks*, the defendant's role in planning the criminal enterprise that led to one or more deaths and their role in supplying or using lethal weapons are key factors in determining major participant status. (*Banks, supra*, 61 Cal.4th at p. 803.) By providing the means to transport firearms and facilitating their acquisition, McGregor played a crucial role in creating the conditions that led to De La Rosa's death.

Third, McGregor was aware his codefendants were armed and of the potential high risk of violence during the robbery. McGregor knew Agboola had been robbed himself of a substantial sum—about $25,000-$30,000—just days before. McGregor described Agboola and Asenuga as "they were just on rantics [*sic*]" about the people who had betrayed and robbed them.

In this context, McGregor's use of "rantics" indicated Agboola and Asenuga were engaged in excited, angry, and persistent talk or behavior, focused on a desire to recover an amount equivalent to the money taken from Agboola. This supports the conclusion McGregor was aware of the volatile situation and its potential for a violent robbery.

Fourth, McGregor had the opportunity to prevent the robbery and murder. As the driver, he controlled whether or not to follow the victims.

Fifth, after McGregor heard gunshots he repositioned the SUV near the scene, approached the scene, and actively participated in the robbery by taking De La Rosa's cross necklace. Asenuga stated, "I just shot that [person]. Let's go," and McGregor then aided the escape and shared in the robbery

proceeds. McGregor's actions at the crime scene and his help with the escape demonstrate his significant involvement.

### 2. *Reckless indifference*

The evidence showed McGregor knew his codefendants were armed with firearms for the robbery, a significant factor in establishing reckless indifference. (*Clark, supra*, 63 Cal.4th at p. 618.)

As shown by the evidence, the pursuit of the victims from the Cali Plug parking lot to their Tarzana rental home lasted about 50 minutes, ample time for McGregor to contemplate the risks involved in a robbery along with his armed partners, and to consider whether or not to withdraw.

There is no evidence McGregor took any actions to minimize the risk of violence. Despite knowing his codefendants were armed and agitated, he continued to participate in the planned robbery. McGregor's knowledge further demonstrates his awareness of the potential for violence.

After hearing gunshots and learning someone had been shot, McGregor did not attempt to render aid or contact authorities. Instead, McGregor admitted taking De La Rosa's cross necklace, demonstrating a callous disregard for the victim's life and well-being. This behavior indicates McGregor prioritized the success of the robbery over the life of the victim, demonstrating reckless indifference to human life.

The totality of the circumstances of the robbery and murder supports the jury's decision. McGregor's extensive involvement in the planning and execution of the robbery, combined with his awareness of the armed and potentially volatile nature of his codefendants, demonstrates he "knowingly engag[ed] in criminal

activities known to carry a grave risk of death." (*Banks, supra*, 61 Cal.4th at p. 801.)

Viewing the evidence in the light most favorable to the judgment, we conclude substantial evidence supports the jury's finding McGregor was a major participant who acted with reckless indifference to human life. His actions demonstrated a level of involvement and awareness that meets the standard for felony murder liability under section 189, subdivision (e)(3).

## B. *Attempted robbery of John Doe (count 13)*

An attempt to commit a crime requires two elements: (1) a specific intent to commit the crime, and (2) a direct but ineffectual act done towards its commission. (§ 21a; *People v. Toledo* (2001) 26 Cal.4th 221, 229.) The act must go beyond mere preparation and show the perpetrator is putting his or her plan into action. (*Toledo*, at p. 230.)

Here, McGregor's specific intent to commit robbery can be inferred from his text message exchange with Matthews about potential targets; his response, "Pick who look good," to Matthews's inquiry about potential victims; his instruction to Matthews to "[c]ome now" after receiving a photo and description of the proposed victim; and his text, "We pulling up," as he approached the dispensary to put the plan in action.

McGregor's actions went beyond mere preparation and constituted the beginning of the execution of the plan to rob. McGregor drove to the dispensary parking area in response to Matthews's information about the target, entering the lot in the BMW SUV shortly after the victim left the dispensary. McGregor then attempted to follow the victim's car out of the parking lot, but lost him.

16

McGregor's direct involvement provides strong support for the attempted robbery conviction. McGregor was physically present in the vehicle pursuing the victim, had control over the pursuit, and was in a position to immediately carry out the robbery if they had caught up to the victim. This level of direct involvement moves McGregor's actions firmly into the realm of attempt. In that substantial evidence of McGregor's intent and his direct participation in pursuing the victim was presented, we conclude there was a sound basis to find McGregor guilty of attempted robbery.

## DISPOSITION

As to both Matthews and McGregor, the judgments are affirmed.

_____

CHAVEZ, J.

We concur:


_____

LUI, P. J.


_____

ASHMANN-GERST, J.

17